

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 29, 2024**

_____

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| PM Management - Killeen I NC LLC, *et al.*, | § | Case No. 24-30240 (sgj) |
| | § | |
| Debtors.[1] | § | Jointly Administered |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
### DEBTORS' THIRD AMENDED SUBCHAPTER V JOINT PLAN OF LIQUIDATION

Upon the: (i) filing by the above-captioned debtors and debtors in possession (the

"**Debtors**") in the above-captioned subchapter V cases (the "**Cases**") of the: (a) *Debtors' Third*

*Amended Subchapter V Joint Plan of Liquidation* (as amended, supplemented, and/or modified,

---

[1] The Debtors in these subchapter V of chapter 11 cases, along with the last four digits of each Debtor's EIN are PM Management - Killeen I NC LLC (3105), PM Management - Killeen II NC LLC (3179), PM Management - Killeen III NC LLC (3245), and PM Management – Portfolio VIII NC LLC (3048).

the "**Plan**") [Docket No. 203],[2] a copy of which is attached hereto as <u>**Exhibit 1**</u>, which Plan amends

and replaces the previously filed plans of liquidation at Docket Nos. 134, 152, and 186; (b) the

*Declaration of Brittney Whitaker in Support of Confirmation of Debtors' Subchapter V Plan of*

*Liquidation* [Docket No. 185] (the "**Balloting Declaration**"); and (c) the *Debtors' Brief in Support*

*of and Response to Objections to Confirmation Of Debtors' Second Amended Subchapter V Joint*

*Plan of Liquidation* [Docket No. 189] (the "**Confirmation Brief**" and with all of these items being

hereinafter collectively referred to as the "**Plan Filings**"); (ii) the Court having: (a) reviewed the

Plan Filings, (b) conducted the Confirmation Hearing, (c) heard the statements, representations,

and arguments of counsel for Debtors, the Subchapter V Trustee (as defined below), and evidence

presented or proffered at the Confirmation Hearing, (d) considered the compromises and

settlements embodied in and contemplated by the Plan, the briefs and arguments regarding

Confirmation of the Plan, the withdrawal and resolution of any and all objections or informal

comments to the Plan, the support of the Subchapter V Trustee and other constituents, and the

evidence regarding Confirmation of the Plan; and (iii) Debtors, through their solicitation agent,

Omni Agent Solutions ("**Omni**"), having distributed Solicitation Packages to the Holders of

Claims entitled to vote on the Plan, as appropriate and required by the Bankruptcy Rules, the Court

hereby FINDS as follows:

      A.    <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and on the

record during the Confirmation Hearing constitute this Court's findings of fact and conclusions of

law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by

Bankruptcy Rules 7052 and 9014. To the extent any of the findings of fact constitute conclusions

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

      B.    <u>Exclusive Jurisdiction; Venue; Core Proceeding</u> (28 U.S.C. §§ 157(b)(2) and 1334(a)). This Court has jurisdiction over the Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this judicial district was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and this Court has the exclusive jurisdiction to consider Confirmation of the Plan and enter a final order with respect thereto.

      C.    <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Cases maintained by the Clerk of the Court and considers all evidence and arguments made, proffered, or adduced at the various hearings held before this Court during the pendency of the Cases.

      D.    <u>Burden of Proof</u>. The Debtors have the burden of proving the elements of Bankruptcy Code section 1191 and the applicable elements of section 1129(a) by a preponderance of the evidence. The Debtors have met their burden with respect to all applicable elements under Bankruptcy Code sections 1191 and 1129.

      E.    <u>Subchapter V of Chapter 11 Petitions</u>. On the Petition Date, the Debtors filed voluntary petitions for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtors have continued as debtors in possession pursuant to Bankruptcy Code sections 1108 and 1184.

      F.    <u>Subchapter V Trustee</u>. On February 5, 2024, the Office of the United States Trustee filed the *Notice of Appointment of Subchapter V Trustee* [Docket No. 40], appointing Areya Holder Aurzada as the subchapter V trustee pursuant to Bankruptcy Code section 1183(a) and 28 U.S.C. § 586(a)(3).

G.    <u>Solicitation and Tabulation</u>. On March 28, 2024, in accordance with applicable sections of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all other applicable laws in connection therewith, the Debtors caused Omni to transmit and serve solicitation materials, including a copy of the Plan, a form of ballot ("**Ballot**"), and notice of the confirmation hearing to occur on April 23, 2024 at 2:30 p.m. CT ("**Confirmation Hearing Notice**" and together with the Plan and Ballot, a "**Solicitation Package**") on the Holders of Claims in Class 3 (the "**Voting Class**"). Under Bankruptcy Code section 1126(f), Debtors were not obligated to solicit votes from Holders of Claims and Interests that are not Impaired and deemed to accept the Plan and, the Court finds that Classes 1 and 2 are not Impaired under the Plan, and, thus, deemed to have accepted the Plan. Under Bankruptcy Code section 1126(g), Debtors were not obligated to solicit votes from Holders of Claims and Interests that are fully Impaired and deemed not to accept the Plan and, the Court finds that Class 4 is fully Impaired under the Plan, and, thus, deemed not to have accepted the Plan.

H.    <u>Notice</u>. On March 28, 2024, the Court entered its *Order Providing Notice of Confirmation Hearing and Establishing Key Deadlines* [Docket No. 137], which approved the Debtors' form Confirmation Hearing Notice and set key deadlines, including, without limitation, April 16, 2024 at 5:00 p.m. CT as the deadline to object to Confirmation of the Plan and the deadline to vote on the Plan.

I.    <u>Transmittal and Mailing of Materials; Notice</u>. The transmittal and service of Solicitation Packages, through Omni, was conducted in compliance with applicable Bankruptcy Rules. As evidenced by Omni's Certificates of Service [Docket Nos. 144 and 162], Debtors provided due, proper, timely, adequate, and sufficient notice to all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to

Confirmation of the Plan), in accordance with the Bankruptcy Rules and the Court's *Order Granting Motion for Expedited Hearing on Confirmation of Debtors' Subchapter V Joint Plan of Liquidation* [Docket No. 138], and all creditors and parties-in-interest have had ample opportunity to appear and be heard with respect thereto, and no other or further notice is required.

J.      <u>Good Faith</u>. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, and all other applicable provisions, rules, and statutes such that this Court finds that Debtors, Debtors' professionals, and all of their respective directors, officers, employees, members, participants, agents, representatives, partners, affiliates, advisors, and successors or assigns, have acted in good faith within the meaning of Bankruptcy Code sections 1125(e) and 1129(a)(3) and are, thus, entitled to the protections afforded by Bankruptcy Code section 1125(e).

K.      <u>Voting Declaration</u>. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. As evidenced by the Balloting Declaration, the Voting Class accepted the Plan.

L.      <u>Proper Classification of Claims</u>. The Plan adequately and properly identifies and classifies all Claims and Interests. Pursuant to 11 U.S.C. § 1122(a), the Claims and Interests placed in each Class are substantially similar to other Claims and Interests in each such Class. Pursuant to 11 U.S.C. § 1123(a)(1), valid legal and business reasons exist for the various classes of Claims and Interests under the Plan and such classification does not unfairly discriminate among Holders of Claims and Interests. The Plan's classification of Claims and Interests is reasonable.

M.      <u>Specified Unimpaired Classes</u>. The Plan complies with Bankruptcy Code section 1123(a)(2) by specifying all classes or Claims or Interests that are not Impaired under the Plan.

N.    <u>Specified Treatment of Impaired Classes</u>. The Plan complies with Bankruptcy Code section 1123(a)(3) by specifying the treatment of all classes of Claims or Interests that are Impaired under the Plan.

O.    <u>No Discrimination</u>. The Plan complies with Bankruptcy Code section 1123(a)(4) by providing for equal treatment of Claims or Interests in each respective Class.

P.    <u>Implementation of the Plan</u>. Article VII of the Plan provides adequate means for implementation in accordance with Bankruptcy Code section 1123(a)(5).

Q.    <u>No Material Plan Modifications</u>. The Court finds and concludes that any modifications to the Plan set forth in this Confirmation Order or otherwise (collectively, the "**Plan Modifications**") do not have any material adverse impact on any interested party and are appropriate under the circumstances.

R.    <u>Releases, Exculpations, and Injunctions</u>. Pursuant to Bankruptcy Rule 3016(c), the Plan describes in specific and conspicuous language all acts to be enjoined by and identifies the entities that are subject to releases and injunctions provided under, the Plan, including without limitation, Article VIII thereof. The Court finds that each release, exculpation, and injunction provision set forth in the Plan is: (i) within the jurisdiction of the Court under 28 U.S.C. §§ 1334; (ii) essential to the implementation of the Plan pursuant to Bankruptcy Code section 1123(a)(5) and warranted by the circumstances of the Cases; (iii) an integral element of the Plan; (iv) the product of an arms-length transaction and a critical element of obtaining the support of the various constituencies for Plan support; (v) fair, equitable, and in the best interests of Debtors' estates and creditors; (vi) important to the overall objectives of the Plan, including without limitation, to finally resolve claims against or among key parties in the Cases; and (vii) consistent with

Bankruptcy Code sections 105, 1123, and 1129, and other applicable provisions of the Bankruptcy

Code.

S.    <u>Assumption and Rejection of Executory Contracts</u>. In accordance with Bankruptcy

Code section 1123(b)(2), upon entry of the Confirmation Order, and except with respect to the HC

Master Lease (defined below), Debtors will be conclusively deemed to have rejected all Executory

Contracts not expressly assumed prior to the Effective Date or as listed in the Plan Supplement,

pursuant to Article V of the Plan or another order of the Court. For the avoidance of doubt, no

prepaid D&O Insurance Policies or other prepaid insurance policies shall be cancelled, and the

Debtors' directors, officers, and employees who have valid claims against the D&O Insurance

Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from

the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies.

As such, and notwithstanding anything in this Plan to the contrary, pursuant to sections 365(a) and

1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies or other insurance policies, to the

extent the contract providing for such is determined to be an executory contract, shall be deemed

assumed by the Debtors.  To the extent the D&O Insurance Policies or other insurance policies are

invoked by the Liquidation Trustee or as a result of the Transition, the Liquidation Trust shall pay

any and all deductibles related to the D&O and other insurance Policies.

T.    <u>Arm's-Length and Touchstone's Good Faith</u>. The Sale was negotiated and is

undertaken by the Debtors and Touchstone at arm's length without collusion or fraud, and in good

faith within the meaning of section 363(m) of the Bankruptcy Code.  Touchstone is not an "insider"

of the Debtors as that term is defined by section 101(31) of the Bankruptcy Code.  Touchstone

(i) recognized that the Debtors were free to deal with any other party interested in acquiring the

Assets and (ii) complied with the Bankruptcy Code and this Plan in all respects.  All payments to

be made by Touchstone and other agreements or arrangements entered into by Touchstone in connection with the Sale have been disclosed; neither Touchstone nor the Debtors have entered into collusive bidding prohibited by Bankruptcy Code section 363(n) by any action or inaction; and no common identity of directors or controlling stockholders exists between and among Touchstone on the one hand, and the Debtors, on the other.  As a result of the foregoing, Touchstone is a "good faith purchaser" within the meaning of Bankruptcy Code section 363(m), and as such, is entitled to all of the protections afforded thereby, including in the event this Plan or any portion thereof is reversed or modified on appeal, and each of Touchstone and the Debtors otherwise have proceeded in good faith in all respects in connection with the Sale specifically and these Subchapter V Cases generally.

U.      No Fraudulent Transfer.  The Transition Agreements were not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors.  Neither the Debtors, nor Touchstone has entered into the Transition Agreements or is consummating the Sale with any fraudulent or otherwise improper purpose.  The Purchase Price (defined in the Transition Agreements) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and any other applicable law, and the Sale of the Assets may not be avoided under section 363(n) of the Bankruptcy Code.

V.      No Liability under Section 363(n).  Neither the Debtors nor Touchstone engaged in any conduct that would cause or permit the Transition Agreements or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

W.    <u>Transfer of Assets Free and Clear</u>. The Debtors are the sole and lawful owner of the Assets included in the Sale, or otherwise has a valid, enforceable property interest in such, and title thereto is vested in the Debtors.  Subject to Bankruptcy Code section 363(f) and the satisfaction of the KeyBank Fees (defined herein), and except as otherwise provided in this Plan or the Confirmation Order, the transfer of each of the Assets to Touchstone will be, as of the date of closing the Sale, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest Touchstone with all right, title, and interest of the Debtors to the Assets free and clear of, among other things: (i) all Liens, (ii) all debts arising under, relating to, or in connection with any act of the Debtors or Claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the Subchapter V Cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims and Liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, the Debtors' or Touchstone's interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction on use, voting, transfer, receipt of income or other exercise of any attributes of ownership), relating to, accruing or arising any time prior to or on the Closing Date. The Debtors served this Plan on all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any interest in the Assets included in the Sale.

X.    <u>Free and Clear Findings Required by Touchstone</u>.  Touchstone would not have entered into the Sale and would not consummate the transactions contemplated thereby if the Sale

to Touchstone were not free and clear of any and all interests pursuant to Bankruptcy Code section

363(f), or if Touchstone would, or in the future could, be liable for any of such interests.  Upon the

Effective Date, Touchstone shall not be responsible for any interests with respect to the Sale,

including the following: (i) any labor or employment agreements; (ii) all mortgages, deeds of trust

and security interests; (iii) any intercompany loans and receivables between the Debtors of the

Debtors' affiliates; (iv) any pension, welfare, compensation or other employee benefit plans,

agreements, practices and programs, including, without limitation, any pension plan of any

Debtors, or any affiliate of; (v) any other employee, worker's compensation, occupational disease

or unemployment or temporary disability related claim, including, without limitation, claims that

might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of

1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964,

(d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age

Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as

amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget

Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation

laws or any other similar state laws, (k) the Worker Adjustment and Retraining Notification Act,

29 U.S.C §§ 2101 et. seq., or (l) any other state or federal benefits or claims relating to any

employment with the Reorganized Debtor or any of their predecessors; (vi) interests arising under

any Environmental, Health and Safety Laws with respect to any assets owned or operated by

Reorganized Debtor or any corporate predecessor at any time prior to the Effective Date and any

liabilities of the Debtors; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances,

including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any and all

Interests arising out of violations, or other non-compliance with any law(s), regulation(s),

standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration; and (x) any theories of successor liability or causes of action related thereto. Sale of the Assets other than one free and clear of all interests would yield substantially less value for the Debtors, with less certainty, than the Sale as contemplated. Therefore, the Sale contemplated by this Plan maximizes the Debtors recovery on the Assets, and, thus, is in the best interests of the Debtors, creditors and all other parties in interest.

Y.      Subject to satisfaction of the KeyBank Fees, the Debtors are authorized to sell the Assets free and clear of all interests because, with respect to each creditor or other person or entity asserting an interest, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Each creditor or other person or entity asserting an interest in the Assets: (i) has, subject to the terms and conditions of this Confirmation Order, consented to the Sale or is deemed to have consented; (ii) will have a lien attached to the proceeds of the Sale in the same priority and to the same extent as such lien attached to the Assets; (iii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or other interest; or (iv) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. All parties in interest, including, without limitation, any holders of claims or interests that did not object, or who withdrew their objection to the Sale or the Plan. Those holders of claims or interests who did not object (or who ultimately withdrew their objections, if any) to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of any claims or interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code because their claims or interests will attach

to the proceeds of the Sale to the same extent and priority as such claims or interests attached to the Assets as of the Petition Date.

Z.    <u>No Successor Liability</u>. Touchstone is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exists now or has ever existed between Debtors, on the one hand, and the Touchstone, on the other.  The conveyance of the Assets as part of the Sale does not amount to a consolidation, merger or *de facto* merger of Touchstone and the Debtors; there is not substantial continuity between Touchstone and the Debtors; there is no continuity of enterprise between the Debtors and Touchstone; Touchstone is not a mere continuation of the Debtors and Touchstone does not constitute a successor to the Debtors.  Subject to the satisfaction of the KeyBank Fees, Touchstone's acquisition of the Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Effective Date.  Touchstone's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets. Touchstone would not have acquired the Assets but for the foregoing protections against potential claims based upon "successor liability" theories. Touchstone will not have any successor or transferee liability for liabilities of the Debtors or any affiliate of the Debtors (whether u federal or state law or otherwise) as a result of the Sale.

AA.    <u>Principal Purpose of the Plan</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. The Plan, thus, satisfies the requirements of Bankruptcy Code section 1129(d).

BB.    <u>Subchapter V Plan Deadline</u>. The Plan complies with Bankruptcy Code section 1189 because it was timely filed within the deadline of April 29, 2024.

CC.     <u>Subchapter V Plan Content</u>. The Plan complies with Bankruptcy Code section 1190(1) because the Plan provides the following mandatory content: (i) a brief history of Debtors' business operations and (ii) a liquidation analysis.

DD.     <u>Satisfaction of Confirmation Requirements</u>. For the reasons set forth in the Confirmation Brief, Debtors have satisfied and the Plan complies with, all applicable provisions of Bankruptcy Code section 1129(a), which are expressly made applicable by Bankruptcy Code section 1191(a) and, even if the Plan could not be confirmed as a consensual plan, the Debtors have also satisfied the requirements under Bankruptcy Code section 1191(b) because the Plan does not discriminate unfairly and is fair and equitable.

a.      The Plan and the Debtors have complied with all applicable provisions of the Bankruptcy Code, as required by Bankruptcy Code sections 1129(a)(1) and (2).

b.      The Plan was proposed in good faith and not by any means forbidden by law, and, the Debtors have satisfied the good faith requirement under Bankruptcy Code section 1129(a)(3).

c.      Any payment made or to be made by the Debtors, for services or for costs and expenses in or in connection with the Cases, or in connection with the Plan and incident to the Cases, has been approved by, or is subject to the approval of, the Court as reasonable, and, thus, the Plan complies with section 1129(a)(4).

d.      Under Article VII of the Plan, the Debtors have disclosed that the Debtors' current Board and officers be dissolved and replaced by the Liquidation Trust and Liquidation Trustee and, thus, complies with section 1129(a)(5).

e.      Bankruptcy Code section 1129(a)(6) is inapplicable.

f.      The Debtors' evidence, including the Liquidation Analysis attached as **Exhibit A** to the Plan, demonstrates that each Class under the Plan is receiving not less than such Class would have received if the Debtors had liquidated under Chapter 7 of the Bankruptcy Code. Accordingly, the Plan complies with Bankruptcy Code section 1129(a)(7).

g.      The only Unimpaired Class under the Plan with the right to vote, Class 3, voted to accept the Plan. Classes 1 and 2 are not Impaired under the Plan and, thus, are deemed to have accepted the Plan. Class 4 is fully Impaired under the Plan and, thus, are deemed not to have accepted the Plan. Thus, Bankruptcy Code section 1129(a)(8) has not been satisfied.

h.      To the extent that Bankruptcy Code section 1129(a)(9) applies, the Plan may be confirmed pursuant to the "special rule" under Bankruptcy Code section 1191(e), which provides in pertinent part that a subchapter V "plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) may be confirmed under section (b) of" Bankruptcy Code section 1191.

i.      The Voting Class has accepted the Plan.

j.      Bankruptcy Code section 1129(a)(11) does not apply to the Plan.

k.      Pursuant to § 4(b)(3) of the Small Business Reorganization Act of 2019, the Debtors are not required to make quarterly payments to the U.S. Trustee in accordance with 28 U.S.C. § 1930(a)(6)(A). Thus, to the extent Bankruptcy Code section 1129(a)(12) applies, the Plan may be confirmed.

l.      Bankruptcy Code sections 1129(a)(13)-(16) do not apply to the Plan.

m.     The Plan does not unfairly discriminate and is fair and equitable, within the meaning of Bankruptcy Code section 1191.

(i)     Bankruptcy Code section 1191(c)(1) is satisfied because the Plan satisfies the requirements under Bankruptcy Code section 1129(b)(2)(A) as to Allowed Secured Claims.

(ii)     Bankruptcy Code section 1191(c)(2)(B) is satisfied because the Plan satisfies the requirement that the value of property to be distributed under the Plan is not less than the projected disposable income of the Debtors.

(iii)     Bankruptcy Code section 1191(c)(3)(A) is satisfied because the Debtors will be able to make all payments under the Plan.

EE.     Requirements for Confirmation Are Satisfied. Debtors have satisfied all of the requirements for Confirmation of the Plan under Bankruptcy Code section 1191. Confirmation of the Plan is in the best interests of Debtors' estates, Debtors' creditors, and all other parties in interest.

Now, THEREFORE, in view of the foregoing FINDINGS, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1.     Incorporation of Findings. The foregoing findings are hereby incorporated into and form an integral part of this Confirmation Order.

2.     Notice of Confirmation Hearing. Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

3.      <u>Solicitation</u>. The solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

4.      <u>Plan Modifications</u>. The Plan Modifications set forth in this Confirmation Order or otherwise do not have any material adverse impact on any interested party, and may be implemented without further notice, hearing, or solicitation, and are appropriate under the circumstances. In accordance with Bankruptcy Code section 1127 and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan are deemed to have accepted the Plan as modified hereby.

5.      <u>Objections</u>. For the reasons stated on the record, any objections to Confirmation of the Plan that have not been withdrawn, resolved, waived, or settled are overruled on the merits.

6.      <u>Plan Confirmation</u>. The Plan is hereby CONFIRMED in its entirety under Bankruptcy Code section 1191(a).

7.      <u>Approval of Plan Releases, Exculpations, and Injunctions</u>. Each release, exculpation, and injunction provision set forth in the Plan is hereby approved.

8.      <u>Assumption and Rejection of Executory Contracts</u>. In accordance with Bankruptcy Code section 1123(b)(2), upon entry of the Confirmation Order, and except with respect to the Master Lease and Master Lease Addendum each dated February 1, 2011, as amended by a First Amendment to Master Lease Agreement dated February 1, 2015, and all associated subleases (the "HC Master Lease") which shall be rejected effective as of the Effective Date, Debtors will be conclusively deemed to have rejected all Executory Contracts not expressly assumed prior to the Effective Date or listed in the Plan Supplement, pursuant to Article V of the Plan or another order of the Court.  For the avoidance of doubt, no prepaid D&O Insurance Policies or other prepaid

insurance policies shall be cancelled, and the Debtors' directors, officers, and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies. As such, and notwithstanding anything in this Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies or other insurance policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors. To the extent the D&O Insurance Policies or other insurance policies are invoked by the Liquidation Trustee or as a result of the Transition, the Liquidation Trust shall pay any and all deductibles related to the D&O and other insurance Policies.

9.      Rejection Damage Claim and Related Claim Bar Date. A proof of claim arising from the rejection of an Executory Contract or Unexpired Lease (such claim, a "**Rejection Damage Claim**") must be filed with the Court and served upon counsel for Debtors on or before the date that is thirty (30) days after the later of (i) the date of entry of a Confirmation Order with respect to the Plan; or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease (the "**Rejection Damage Claim Bar Date**"). Any and all Rejection Damage Claims not filed on or before the Rejection Damage Claim Bar Date shall be automatically disallowed and forever barred in their entirety and shall not be enforceable against Debtors, Debtors' estates, or their respective properties or interests in property as agents, successors, or assigns.

10.     Binding Effect. Effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, Bankruptcy Code section 1141, the Plan and this Confirmation Order shall be binding on: (a) the Debtors; (b) all Holders of Claims and Interests, irrespective of whether they are

Impaired under the Plan and whether or not such Holders of Claims and Interests voted to accept

the Plan; and (c) each person or entity acquiring property under the Plan. The Plan shall apply and

be enforceable notwithstanding any otherwise applicable non-bankruptcy law. Additionally, entry

of this Confirmation Order is deemed consent by any counterparty to an Executory Contract or

Unexpired Lease to the assignment of Debtors' right, title, and interest in such Executory Contract

or Unexpired Lease, and as evidence of such consent, a copy of this Confirmation Order may be

filed with any and all applicable state, federal, or other governmental or regulatory authority and/or

in any applicable governmental record.

11.    <u>Debtors' Authorization</u>. Debtors are hereby authorized and fully empowered to take

any and all actions as may be necessary and appropriate to consummate, effectuate, and implement

the Plan and all transactions contemplated thereby, including, without limitation, to effectuate or

otherwise document the Transition, pursuant to the terms, and subject to the conditions, of the

Plan.

12.    <u>Sale and Transition</u>. Pursuant to Bankruptcy Code section 1123(b)(4) and upon

KeyBank's receipt of the KeyBank Fees (defined below), the Debtors shall sell substantially all

Assets, exclusive of Cash, accounts receivable, and Causes of Action, to Touchstone free and clear

of all Liens, Claims, Interests, and all other encumbrances.  The full schedule of Assets shall be

included in the Bill of Sale and Transition Agreements, which shall be attached to the Plan

Supplement.  Closing of the Sale shall occur on the Effective Date.  At the closing of the Sale, to

the extent not otherwise previously satisfied, Debtors shall cause the amounts owed to KeyBank

under its Loan Documents (as defined in the *Final Order Pursuant to 11 U.S.C. § 105, 361, 362,*

*363(c)(2), and 507 (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate*

*Protection; (III) Modifying the Automatic Stay; (IV) Setting a Final Hearing; and (V) Granting*

*Related Relief*) for reimbursement of attorneys' fees, costs, and expenses in an amount not to exceed $50,000, to be paid to KeyBank (the "KeyBank Fees"). Upon KeyBank's receipt of the KeyBank Fees and the closing of the Sale, any claims filed by KeyBank in the Debtors' cases shall been deemed withdrawn without further action by any party, and all liens securing KeyBank's claims shall be deemed released without further action by any party.

13.     <u>Transition of Services</u>. Upon the Effective Date, the Transition shall occur pursuant to the terms of the Transition Agreements.

14.     <u>Amendments to Transition Agreements</u>.   The Transition Agreements and any related agreements, documents, or other instruments may be modified, amended, supplemented or restated by the parties thereto in a writing signed by such parties and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, supplement or restatement does not alter the economic substance of the Transition Agreements.

15.     <u>Transfer Free and Clear</u>.  Subject to KeyBank's receipt of the KeyBank Fees, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, upon the closing and unless otherwise provided in the Transition Agreements, neither Touchstone, nor any of its respective successors and assigns shall have any liability for any claim or interest whether known or unknown as of the Effective Date, now existing or hereafter arising, whether fixed or contingent, whether as a successor, vicariously or otherwise, of any kind, nature or character whatsoever. Upon satisfaction of the KeyBank Fees, the Assets are conveyed by the Debtors, to Touchstone free and clear of any claim or interest.

16.     <u>Surrender of Possession</u>.  Subject to the prior satisfaction of the KeyBank Fees, any and all Assets in the possession or control of any person or entity, including any and all equity

security holders, affiliates, vendor, supplier, or employee of the Debtors shall be transferred to Touchstone free and clear of all claims or interests and shall be delivered to Touchstone and deemed delivered at the time of closing (or such other time as provided in the Transition Agreements).

17.      <u>Vesting of Assets in Touchstone</u>.  Effective upon the Effective Date and KeyBank's receipt of the KeyBank Fees, the transfer to Touchstone of the Debtors' rights, title, and interests in the Assets pursuant to the Transition Agreements shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Debtors' rights, title and interests in the Assets, and vests with or will vest in Touchstone all right, title, and interest of the Debtors in the Assets set forth in the Transition Agreements, free and clear of all claims and interests to the maximum extent permitted by section 363 of the Bankruptcy Code.

18.      <u>Sale Exculpation and Release</u>.  Neither Touchstone or any of its respective affiliates, successors, assigns and advisors shall have or incur any liability to, or be subject to any action by the Debtors, their estates or any of their predecessors, successors or assigns, equity security holders, or affiliates of the Debtors, arising out of the negotiation, investigation, preparation, execution or delivery of the Transition Agreements, and the entry into and consummation of the Sale.

19.      <u>Sale Injunction</u>.  Except as expressly provided in the Transition Agreements or by this Confirmation Order, effective upon the Effective Date, all persons and entities, including, but not limited to, all debt holders, equity security holders, affiliates of the Debtors, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons holding claims or interests against or in the Debtors or the Debtors' interests in the Assets as set forth in the Transition Agreements shall be and hereby are forever

barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing such claims or interests against Touchstone, its successors and assigns, or the Assets as set forth in the Transition Agreements.  All persons are hereby enjoined from taking any action that would interfere with or adversely affect the ability of the Debtors to transfer the Assets in accordance with the terms of the Transition Agreement and this Confirmation Order.  Following the closing, no holder of a claim or interest against the Debtors, equity security holder, or affiliates of the Debtors shall interfere with Touchstone's title to or use and enjoyment of the Assets as set forth in the Transition Agreements.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred, or conveyed to Touchstone on account of the filing or pendency of these Subchapter V Cases or the consummation of the Sale and Transition.

20.    <u>Fair and Equivalent Value</u>.  The consideration provided by Touchstone for the Assets under the Transition Agreements shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or under any other law of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.

21.    <u>Transfer of Marketable Title</u>.  Upon the closing of the Sale and satisfaction of the KeyBank Fees, this Confirmation Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Debtors' rights, title and interests in the Assets set forth in the Transition Agreements, or a bill of sale transferring good and marketable title in such Assets set forth in the Transition Agreements to

Touchstone at the closing of the Sale pursuant to the terms of the Transition Agreements, free and clear of all claims and interests.

22.    <u>Good Faith Buyer</u>.  Touchstone is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, and Touchstone has proceeded in good faith in all respects in connection with the Sale specifically and these Subchapter V Cases generally.

23.    <u>No Successor Liability</u>.  Upon the Effective Date and subject to KeyBank's receipt of the KeyBank Fees, Touchstone's acquisition of the Assets set forth in the Transition Agreements shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Effective Date.  Touchstone's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets purchased as set forth in the Transition Agreements.

24.    <u>Capital Expenditure Funds</u>.  Notwithstanding anything in this Confirmation Order, the Plan, or Plan Supplement to the contrary, upon entry of this Confirmation Order, the Debtors and their successors and assigns reserve their rights to pursue reimbursement from the Landlord's capital expenditure escrow accounts for expenses actually incurred by the Debtors prior to the Effective Date pursuant to the terms of the Debtors' leases and subleases with the Landlords.

25.    <u>Binding Effect of Confirmation Order on Sale and Transition</u>.  This Confirmation Order and the Transition Agreements shall be binding in all respects upon the Debtors, all creditors of the Debtors, and holders of equity security interests in the Debtors, affiliates of the Debtors, officers and/or employees of the Debtors, and any holders of claims or interests in, against, or on all or any portion of the Assets (whether known or unknown) as set forth in the Transition Agreements, and Touchstone and all successors and assigns of Touchstone.

26.     <u>Satisfaction of Conditions Precedent</u>.  Neither Touchstone nor the Debtors shall have an obligation to close the Sale and Transition until all conditions precedent in the Transition Agreements and the Plan, to each of their respective obligations to close the Sale and Transition, have been met, satisfied, or waived in accordance with the terms of the Transition Agreement and the Plan.

27.     <u>No Material Modifications of Sale and Transition</u>.  The Transition Agreements and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties thereto in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement does not alter the economic substance of the Transition Agreements.

28.     <u>Rights of Holders of Allowed Claims</u>. All rights of Holders of Allowed Claims, including, without limitation, the right to receive a Distribution on account of such Claim(s), shall hereinafter be limited solely to the right to receive such Distribution only to the extent and as expressly provided in this Confirmation Order and under the Plan.

29.     <u>Notice of Effective Date and Related Deadlines</u>. Within five (5) business days after the Effective Date, the Liquidation Trustee shall cause to be filed a notice of occurrence of the Effective Date (the "**Notice of Effective Date**") with the Court and serve it upon all known creditors and parties required to receive notice pursuant to Bankruptcy Rule 2002. The Notice of Effective Date shall further set forth the Rejection Damage Claim Bar Date, Administrative Claims Bar Date, and Professional Fee Claim Bar Date, each as set forth and defined herein.

30.     <u>Administrative Claims Bar Date</u>. All parties shall file any and all requests for allowance and payment of administrative expenses incurred on or before the day immediately preceding the Effective Date pursuant to Bankruptcy Code section 503, other than Professional

Fee Claims (defined below) (collectively, "**Administrative Claims**") on the first business day that

is thirty (30) calendar days after the Effective Date (the "**Administrative Expense Bar Date**").

Administrative Claims filed after the Administrative Expense Bar Date shall be disallowed and

forever barred in their entirety.

31.    <u>Professional Fee Claim Bar Date</u>. All parties shall file any and all final applications

for allowance and payment of fees, costs, and expenses incurred by any estate professionals

through and including the day immediately preceding the Effective Date pursuant to Bankruptcy

Code sections 330, 331, 503, or 1103 (collectively, "**Professional Fee Claims**") on the first

business day that is forty-five (45) calendar days after the Effective Date (the "**Professional Final

Fee Application Claims Bar Date**"). Professional Fee Claims filed after the Professional Final

Fee Application Claims Bar Date shall be disallowed and forever barred in their entirety.

32.    <u>Vesting of Property</u>. Except as otherwise provided in the Plan or in this

Confirmation Order, as of the Effective Date and upon satisfaction of the KeyBank Fees, all of the

property of the estate vests in the Liquidation Trust. Except as provided in Bankruptcy Code

sections 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation

Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all

Claims and Interests of creditors.

33.    <u>Ad Valorem Taxes</u>. Notwithstanding anything to the contrary in the Plan or this

Confirmation Order, the Allowed Claims of Tax Appraisal District of Bell County and The County

of Coryell, Texas ("**Bell and Coryell**") with respect to ad valorem property taxes for tax years

2023 and 2024 (the "**Ad Valorem Tax Claims**") shall be classified as unimpaired "Class 1 Secured

Claims." The Debtors or Reorganized Debtors, as applicable, shall pay all allowed tax year 2023

Ad Valorem Tax Claims of Bell and Coryell in full on or before the Effective Date. Bell and

Coryell's Ad Valorem Tax Claims shall include all accrued interest properly charged under applicable non-bankruptcy law through the date of payment.

34.     The Bell and Coryell Ad Valorem Tax Claims for tax year 2024 shall be paid no later than January 31, 2025 by the party or parties responsible for payment of same under the Bill of Sale between the Debtors and Touchstone Communities, LLC, with all statutory penalties and interest pursuant to the Texas Tax Code to accrue and be due thereon if the 2024 taxes are not paid prior to the stated date.

35.     Bell and Coryell's pre-petition ad valorem tax liens for tax years 2023 and 2024 shall be expressly retained in accordance with applicable non-bankruptcy law until the applicable tax year's taxes are fully paid.

36.     Should there be a default on payment of the 2023 or 2024 Bell or Coryell Ad Valorem Tax Claims as provided herein, the applicable unpaid taxing entity or entities are authorized to proceed with all of their state law rights and remedies under the Texas Property Code to collect the full amount of all taxes, penalties, and interest owed, without further order of the Bankruptcy Court or notice to parties.

37.     Closing of Case. Upon completion of all Distributions under the Plan, the Liquidation Trustee shall file a notice of discharge on all Holders of Allowed Claims and such notice shall include certification that the Liquidation Trustee has (i) satisfied the requirements under Bankruptcy Code section 1192, and (ii) made all required Distributions under the Plan within three (3) years from the Effective Date of the Plan. The Liquidation Trustee will notify Touchstone in writing at least 60 days before closing the Case.

38.     Modification after Confirmation. The Liquidation Trustee may modify the Plan at any time within the Commitment Period, but such modified plan shall become the Plan only if

circumstances warrant and the Court, after notice and a hearing, confirms such proposed

modifications under Bankruptcy Code section 1191.

39.    <u>Discharge of Subchapter V Trustee</u>. Pursuant to Bankruptcy Code section 1183, the

Subchapter V Trustee shall terminate any and all services with respect to the Debtors and the Cases

once the Plan has been substantially consummated. Not later than fourteen (14) days after the Plan

is substantially consummated, the Liquidation Trustee shall file with the Court and serve on the

Subchapter V Trustee, the Office of the United States Trustee, and all parties in interest notice of

such substantial consummation.

40.    <u>Amendments/Headings</u>. This Confirmation Order may be amended or

supplemented only upon further, Final Order of the Court. The headings used herein are for ease

of reference only and shall not be used in interpreting this Confirmation Order.

41.    <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order or

the occurrence of the Effective Date, this Court shall retain jurisdiction over all matters arising in,

arising under, or related to these Cases to the fullest extent legally permissible.

42.    <u>Successors/Assigns</u>. This Confirmation Order shall be binding upon, and inure to

the benefit of, Debtors' successors, designees, assigns, beneficiaries, executors, administrators,

and personal representatives.

43.    <u>Conflicts Between this Confirmation Order and the Plan</u>. The provisions of the Plan

and this Confirmation Order shall be construed in a manner consistent with each other so as to

effect the purpose of each; provided, however, that if there is determined to be any inconsistency

between any Plan provision and any provision of this Confirmation Order that cannot be so

reconciled, then solely to the extent of such inconsistency the provisions of this Confirmation

Order shall govern. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Court.

44.    <u>Liquidation Trust Agreement</u>.  The Liquidation Trust Agreement, as amended and attached hereto as **<u>Exhibit 2</u>**, shall be the operative Liquidation Trust Agreement.  The provisions of the Plan and this Liquidation Trust Agreement shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of the Liquidation Trust Agreement that cannot be so reconciled, then solely to the extent of such inconsistency the provisions of the Liquidation Trust Agreement shall govern.

45.    <u>Finality and Immediate Effect of Confirmation Order</u>. This Confirmation Order (i) is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof; and (ii) notwithstanding the applicability Bankruptcy Rule 3020(e), shall be immediately effective and enforceable upon the entry hereof. The failure to reference or address all or part of any particular provision of the Plan herein has no effect on the validity, binding effect, or enforceability of such provision and such provision has the same validity, binding effect, and enforceability as every other provision of the Plan.

46.    <u>Notice</u>. Within five (5) business days of the entry of this Confirmation Order, Debtors shall transmit a copy of this Confirmation Order via first class mail with postage prepaid to all of its known creditors and parties-in-interest. Such notice shall be adequate under the circumstances and shall be sufficient to meet the requirements necessary for due process and Bankruptcy Rule 2002(f)(7).

47.    The Liquidation Trustee shall file post-confirmation distribution reports within forty-five (45) days of making any Distribution under the Plan and shall comply with Local Rule 3022-1 when seeking a Final Decree.

**<u>Exhibit 1</u>**

**Plan**

29

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| PM Management - Killeen I NC LLC, *et al.*,[1] | § | Case No. 24-30240 (sgj) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

---

### DEBTORS' THIRD AMENDED SUBCHAPTER V JOINT PLAN OF LIQUIDATION

Liz Boydston (SBN 24053684)          Max Schlan (Admitted *Pro Hac Vice*)
Alexandria Rahn (SBN 24110246)       Gutnicki LLP
Gutnicki LLP                         45 Rockefeller Plaza
10440 N. Central Expy., Suite 800    Suite 2000
Dallas, Texas 75231                  New York, New York 10111
Telephone: (469) 895-4413            Telephone: (646) 825-2330
Facsimile: (469) 895-4413            Facsimile: (646) 825-2330
lboydston@gutnicki.com               mschlan@gutnicki.com
arahn@gutnicki.com


COUNSEL TO THE DEBTORS
AND DEBTORS IN POSSESSION


Dated: April 25, 2024

---

[1] The Debtors in these subchapter V of chapter 11 cases, along with the last four digits of each Debtor's EIN are PM Management - Killeen I NC LLC (3105), PM Management - Killeen II NC LLC (3179), PM Management - Killeen III NC LLC (3245), and PM Management – Portfolio VIII NC LLC (3048).

# TABLE OF CONTENTS

I.    PLAN AND CONFIRMATION REQUIREMENTS ..................................................... 1
      A.    Brief History of the Business Operations of the Debtor ............................................. 1
      B.    This Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable".... 4
      C.    The Debtors Will Be Able to Make All Distributions Contemplated Under this Plan 5

II.   DEFINITIONS AND CONSTRUCTION OF TERMS .................................................. 5
      A.    Definitions ................................................................................................................. 5
      B.    Interpretation, Application of Definitions, and Rules of Construction ..................... 14

III.  UNCLASSIFIED CLAIMS ............................................................................................ 15
      A.    Treatment of Administrative Claims ........................................................................ 15
      B.    Treatment of Professional Fee Claims ..................................................................... 15
      C.    Priority Tax Claims ................................................................................................... 16

IV.   CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............ 16
      A.    Classification and Treatment of Claims and Interests .............................................. 16

V.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES..................................... 18
      A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ............. 18
      B.    Cure of Defaults and Adequate Assurance ............................................................... 18
      C.    Reservation of Rights ............................................................................................... 19

VI.   DISTRIBUTIONS ........................................................................................................... 19
      A.    Liquidation Trustee to Make Distributions .............................................................. 19
      B.    Quarterly Reports ..................................................................................................... 20
      C.    Method of Payment ................................................................................................... 20
      D.    Objections to and Resolution of Claims ................................................................... 20
      E.    Claims Objection Deadline ....................................................................................... 20
      F.    Disputed Claims ........................................................................................................ 20
      G.    Delivery of Distributions .......................................................................................... 21
      H.    Undeliverable or Unclaimed Distributions ............................................................... 21
      I.    Setoff and Recoupment ............................................................................................. 21
      J.    No Interest ................................................................................................................. 21

VII.  MEANS OF IMPLEMENTATION ............................................................................... 22
      A.    Establishment of Liquidation Trust .......................................................................... 22
      B.    Liquidation Trust Committee .................................................................................... 22
      C.    Appointment of the Liquidation Trustee ................................................................... 22
      D.    Beneficiaries of the Liquidation Trust ...................................................................... 23
      E.    Vesting and Transfer of Assets to the Liquidation Trust ......................................... 23
      F.    Liquidation Trust Expenses ...................................................................................... 23
      G.    Role of the Liquidation Trustee ................................................................................ 23

H.  Preservation of Right to Conduct Investigations ..................................................... 25
I.  Prosecution and Resolution of Causes of Action ..................................................... 25
J.  Federal Tax Treatment of the Liquidation Trust for the Assets ............................... 26
K.  Limitation of Liability .............................................................................................. 26
L.  Term of Liquidation Trust ........................................................................................ 26
M.  Retention of Professionals ........................................................................................ 26
N.  Conflicts Between Liquidation Trust Agreement and Plan ...................................... 27
O.  Cancellation of Existing Securities and Agreements ............................................... 27
P.  Automatic Stay ......................................................................................................... 27
Q.  Books and Records ................................................................................................... 27
R.  D&O Insurance Policies and Other Insurance Policies ........................................... 27
S.  Sale of Assets ........................................................................................................... 28
T.  Transition of Services .............................................................................................. 30
U.  Section 1145 Exemption ........................................................................................... 30

VIII.  **EFFECT OF PLAN CONFIRMATION** .................................................................... **30**
A.  Binding Effect .......................................................................................................... 30
B.  Compromise and Settlement of Claims ................................................................... 30
C.  Plan Injunction ......................................................................................................... 31
D.  Protected Party Injunction ....................................................................................... 31
E.  Exculpation ............................................................................................................... 32
F.  Releases by the Debtors ........................................................................................... 32
G.  Release and Exculpation Injunction ........................................................................ 33
H.  Discharge of Claims ................................................................................................. 33
I.  Preservation of Causes of Action ............................................................................ 35
J.  Release of Liens ....................................................................................................... 36
K.  Liabilities to, and Rights of, Governmental Entities ............................................... 36

IX.  **CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE** ............................ **37**
A.  Conditions Precedent to Confirmation .................................................................... 37
B.  Conditions Precedent to the Effective Date ............................................................ 37
C.  Waiver of Conditions Precedent .............................................................................. 38
D.  Effect of Nonoccurrence of Conditions .................................................................. 38

X.  **RETENTION OF JURISDICTION** ........................................................................... **38**

XI.  **MISCELLANEOUS PROVISIONS** ........................................................................... **40**
A.  Amendment or Modification of this Plan ................................................................ 40
B.  Plan Supplement ...................................................................................................... 40
C.  Additional Documents .............................................................................................. 40
D.  Governing Law ......................................................................................................... 41
E.  Time .......................................................................................................................... 41
F.  Severability ............................................................................................................... 41
G.  Revocation ................................................................................................................ 41

H.  Reservation of Rights ............................................................................................. 41
I.   Successors and Assigns .......................................................................................... 42
J.   Service of Documents ............................................................................................ 42
K.  Entire Agreement................................................................................................... 42
L.   Inconsistency .......................................................................................................... 43
M.  Votes Solicited in Good Faith................................................................................ 43

## I.    Plan and Confirmation Requirements

To confirm a plan under Bankruptcy Code section 1191, whether this Plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7). *See* 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with not less than they would receive if the Debtors filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, this Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtors will be, or are reasonably likely to be, able to make the Distributions as contemplated by this Plan. Additionally, this Plan must include: (a) a brief history of the business operations of the Debtors; (b) the Debtors' liquidation analysis; and (c) projections with respect to the Debtors' ability to make the Distributions provided for under this Plan. See 11 U.S.C. § 1190(1).

The Debtors submit that this Plan: (a) provides the necessary content required by Bankruptcy Code section 1190; and, as set forth more fully below, (b) is confirmable under section 1191 because: (i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive not less than they would in a hypothetical chapter 7 liquidation; (ii) is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) is feasible as the Debtors will be able to make the Distributions contemplated under this Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

### A.    Brief History of the Business Operations of the Debtor

The Debtors are part of Abri Health, which, as of April 2023, managed and provided skilled nursing and assisted living services to 10 skilled nursing facilities ("SNFs") and one assisted living facility ("ALF') in Texas, providing care on a daily basis to thousands of patients and residents. On April 5, 2023, a landlord filed a receivership, to which Abri consented, over five (5) of Abri's SNFs, leaving the Debtors' four (4) facilities and two (2) other non-debtor facilities under the Abri group.

The Debtors operate three (3) SNFs, and one (1) ALF (collectively, the "Facilities" and each, a "Facility"). In addition to patient healthcare, the Debtors—solely through Abri as manager—provide rehabilitation, therapy, and other services to their patients and residents. The Facilities are located in the Killeen, Texas area.

Operators of SNFs across the country are and have been experiencing significant challenges and financial distress in recent years, especially with the COVID-19 pandemic's lasting effects of fewer employees and exponentially higher contract labor costs. The challenges faced by the Debtors are similar to those experienced by other SNF operators and widespread within the skilled nursing industry. The Debtors faced increasing financial pressure caused by, among other things, declining reimbursement rates, difficulties in collecting accounts receivable, declining census and occupancy rates due to COVID, increasing lease obligations, outsized leases, tightening terms with various trade creditors, and exponentially increased nursing staffing and agency labor costs. All of these factors have combined to negatively impact the Debtors' operations and cash flow.

In April 2023, a landlord ("CHI") filed a receivership over five (5) non-debtor facilities and Abri, and this Court ruled that the receivership could not include Abri. That receiver (the "CHI Receiver") required Abri's services and employees to operate the facilities until a transition could occur. This Court ordered the CHI Receiver and/or CHI to pay Abri for the services and employees Abri provides to the CHI Receiver. Abri managed those facilities for 86 days and on June 30, 2023, Abri transitioned management services of those facilities to the CHI Receiver. Abri's services totaled $1,952,277.01, which is undisputed by the CHI Receiver. The only payment the CHI Receiver has ever made to Abri was on August 9, 2023 in the amount of $[200,000]. Since July 1, 2023, Abri has been forced to continue to fund—over Abri's objection—the IT costs, billing systems access, and patients' internet and cable costs for the CHI Receiver's facilities, which has cost Abri $537,096.80. To date, the CHI Receiver and CHI have refused to pay Abri the $2,089,373.81 (and continues to accrue) still owes Abri.

Due to the CHI Receivership, certain orders were issued to Abri's bank, CIBC, regarding the CHI facilities' bank accounts. Abri objected to the CHI Receiver's request to control the HUD Concentration Account (the "Debtors' HUD Concentration Account"), because that account has been used as the central concentration account for all of Abri's HUD-related facilities since 2021. Despite the CHI Receiver not gaining access to the Debtors' HUD Concentration Account—and without notice to or knowledge by Abri—CIBC stopped the daily sweeps from the Debtors' HUD Concentration Account, activated post-no-debits ("PNDs"), and mistakenly removed Abri's ability to view the Debtors' HUD Concentration Account through Abri's banking portal.

In or around June 2023, one or more of the individual owners of Abri began negotiations with the Debtors' landlord HC Hill Country Associates, Ltd., H-C Associates, Ltd., and HC-RW Associates, Ltd. (together, the "Landlords") to potentially purchase the real property on which the Debtors operate. The parties executed an LOI, but negotiations fell through in December 2023 when the Debtors were unable to pay the December debt service to Landlord. Due to Abri Executive Management's perceived cash shortfalls at Abri (from the inability to view the HUD Concentration Account, the unpaid CHI Receivership obligations, and covering the Debtors' shortfalls), Abri was unable to cover the Debtors' December debt service. The January debt service was also not paid.

In early January 2024, the accounting team reviewed the reconciliation activity at all the Debtors' and Abri-related bank accounts to see if any accounts still had any money in them. It was by this act that it was discovered that the Debtors' HUD Concentration Account was hidden from view of the Abri banking portal. In that HUD Concentration Account was $7,449,745.58—money that, but for the daily sweeps being stopped, would have been swept daily into the Abri central treasury and would have been used in the ordinary course of business to fund the Debtors' operations, including the Debtors' share of Corporate employees, insurance, taxes, legal, and all other services provided by Corporate.

When the Debtors' HUD Concentration Account was rediscovered or about January 5, 2024, a massive sigh of relief washed over the entire Abri group. However, Abri still was unable to transfer funds from the Debtors' HUD Concentration Account, and so the accounting team

requested that CIBC immediately transfer $13,291.44 to fund payroll for the Debtors and Corporate on January 8, 2024.

On January 9, 2024, without notice to the Debtors (or Abri as manager of Debtors), the Landlords filed an emergency receivership motion in Bell County, Texas, and the Receiver was appointed hours later.  The timing of the Receiver's appointment could not have been worse from the perspective of patient safety and staff wages and salaries.  Because the Debtors' HUD Concentration Account was just rediscovered and the daily sweep had not been reactivated yet, when the Receiver was appointed, he sought control of the Debtors' HUD Concentration Account—which Abri disputed because that account held almost all moneys available to Abri and the Debtors—so CIBC froze the Debtors' HUD Concentration Account. It was now dire.

On January 12, 2024, Abri and the Debtors hired Kevin O'Halloran as CRO. The CRO's first order of business was to terminate the Executive Management. The CRO next spoke with the Corporate Accounting team and called CIBC to explain that patient safety was first and foremost and payroll for the Debtors and Corporate were critical to be funded immediately. The Debtors joined the Receiver to the call to discuss the same critical need, and the CRO and the Receiver agreed to allow CIBC to fund payroll from the Debtors' HUD Concentration Account.

Next the CRO's advisors contacted the Receiver and provided detailed bank data so the Receiver could see that the money in the Debtors' HUD Concentration Account was nearly the only money available to Abri or the Debtors; and without use of the money in the Debtors' HUD Concentration Account, the Debtors would be unable to provide healthcare to the patients, because Abri would not be able to pay critical vendors relied on by the Debtors and Corporate employees who provide nearly all of the necessary management services for the Debtors to operate.

Between January 12, 2024 and January 21, 2024, the Receiver would take or return the CRO's calls. The Receiver informed the CRO that he was dependent upon Abri and needed Abri to continue to provide 100 percent of the services and employees it provides to the Debtors. The Receiver also asked that the CRO involve the Receiver in any decision regarding terminating employees who were involved in clinical or operational oversight or would in any way impact the Debtors' clinical or operational activities—which the CRO did. On January 16, 2024, the Receiver and the CRO were able to agree to allow CIBC to release $650,000 for the Debtors' trade payables, $30,000 for P-cards, and $600,000 to Abri for Corporate payroll and critical vendor payables, thus allowing the Debtors to provide continuous health care to their patients. On January 22, 2024, the Receiver agreed to allow payment of $790,884.81 for the Debtors' payroll and $464,517.27 for Corporate payroll.

On the weekend of January 20, 2024, after conversations with the Receiver about the provision of services to the Receiver (and as requested by the Receiver), the CRO outlined a proposal regarding the cost and payment necessary for Abri to continue to provide 100 percent of the management services and employees to the Debtors' patients and residents while the Receiver undertook the task of selling the business. However, on Sunday, January 21, 2024, the Receiver informed the CRO that he would have to get permission from Landlords' counsel to engage with him on any proposal and suggested that he would respond on Monday January 22, 2023; ultimately the Receiver provided no meaningful answer, rather went silent on returning calls.  In response,

3

the CRO engaged counsel on behalf of the Debtors to, among other things, prepare a potential bankruptcy filing.

Unfortunately, over the weekend of January 28, 2024, the Landlords' principal informed the CRO that his counsel and the Receiver told him that the money in the Debtors' HUD Concentration Account "was his," he "was better off holding onto the money in the receivership" because he "would get his money," *i.e.* the Receiver had promised to pay some of Landlords' pre-receivership (and now pre-petition) debt and try to bring Landlords' rent current. The CRO explained that the funds in the Debtors' HUD Concentration Account were the only available funds to the Debtors to operate and provide patient care and that if the Receiver used those funds to bring Landlords' rent current, employees would not be paid, critical vendors like food, oxygen, and utilities would not be paid, and patients' lives would be at risk.

On the morning of January 29, 2024, the Receiver sent an email to the Debtors' counsel indicating that he was seeking consent to pay his own fees without providing any detail or amount (after only having been in position for 19 days). A review of the receivership order drafted by Landlords' counsel and entered by the state court without edit lists out the priority of payment, which was first paying the Receiver and Landlords' attorneys' fees, then to Landlord's property expenses, then to debt-service, then to past-due rent and *nothing* to patient care, i.e. payroll, payables, food, medical supplies.

Having received almost no response from the Receiver on the earlier proposal, concerned about the language in the receivership order, and hearing from the Landlords' principal about what his advisors and the Receiver were telling him about how the Receiver would use the money in the Debtors' HUD Concentration Account, plus learning that the first communication from the Receiver to Debtors' counsel was regarding payment of his fees, the CRO felt that patient care was not the Receiver's or the Landlords' priority. The CRO directed Debtors' counsel to file the Debtors' petitions for bankruptcy.

Following the Petition Date, disputes with the Landlords continued. On February 7, 2024, the Landlords filed a motion to dismiss the Debtors' Subchapter V Cases. The motion to dismiss has yet to be resolved. Notwithstanding the Landlords' motion to dismiss, the Debtors strived to find a replacement operator/manager to takeover operation and management of the Facilities. After a diligent search of qualified operators able to maintain patient care, Touchstone Communities, LLC ("Touchstone") agreed to the transition of services with the Debtors. Approval of the Transition Agreements between the Debtors and Touchstone will occur through confirmation of this Plan. Transition to Touchstone is also conditioned on Touchstone's acquisition of the Facilities from the Landlords.

**B.    This Plan Meets the "Best Interest of Creditors" Test and Is "Fair and Equitable"**

In accordance with Bankruptcy Code section 1191(c), this Plan provides that all Distributions will be funded with the Debtors' assets through the Liquidation Trust within the Commitment Period. Additionally, the Debtor's Liquidation Analysis, attached hereto as <u>Exhibit A</u> demonstrates that this Plan is in the best interests of creditors.

Accordingly, this Plan complies with the "best interest of creditors" test and is "fair and equitable" because it proposes to provide total Distributions to Holders of Allowed Claims that exceed the Liquidation Value and are not less than the Debtors' projected Disposable Income for the Commitment Period.

### C.    The Debtors Will Be Able to Make All Distributions Contemplated Under this Plan

In accordance with Bankruptcy Code sections 1191(c)(3)(B)(i) and (ii), this Plan demonstrates that the Debtors have sufficient Cash to provide Pro Rata Share Distributions to Holders of Allowed General Unsecured Claims over the Commitment Period.

## II.    Definitions and Construction of Terms

### A.    Definitions

"*Abri*" means *Abri Health Services, LLC*.

"*Administrative Claim*" means any Claim against any Debtor for costs and expenses of administration of the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Subchapter V Cases pursuant to Bankruptcy Code sections 503(b)(3), (4), and (5); and (d) all fees and charges assessed in the Prior Case pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

"*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, with the exception of Professional Fee Claims, which shall be the first Business Day that is 30 days after the Effective Date.

"*Affiliate*" means an "*affiliate*," as defined in Bankruptcy Code section 101(2).

"*Allowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein: (a) a Claim or Interest that is evidenced by a Proof of Claim Filed by the applicable Bar Date or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or a Claim or Interest for which a Proof of Claim or request for payment of Administrative Claim expressly is not or shall not be required to be Filed under this Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not Contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest that is Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court; provided, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to

allowance or priority or a request for estimation thereof has been interposed within the applicable period of time fixed by this Plan (including the Claims Objection Deadline), the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been Allowed by a Final Order. Unless otherwise specified in this Plan or in an order of the Bankruptcy Court allowing such Claim or Interest, "Allowed" in reference to a Claim or Interest shall not include: (1) any interest on the amount of such Claim accruing from and after the Petition Date; (2) any punitive or exemplary damages; (3) any fine, penalty or forfeiture; or (4) any attorneys' fees and expenses. Any Claim or Interest that has been or is hereafter listed in the Schedules as Contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to Bankruptcy Code section 502(d) shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor. For the avoidance of doubt, a Proof of Claim Filed after the applicable Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or Interest.

"*Assets*" means mean all assets of the Debtors, including, without limitation, all real, personal, tangible and intangible property of the Debtors, including, without limitation, any property of the kind or nature accounted for on the Debtors' balance sheet as of the Effective Date.

"*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to this Plan, Filed as part of the Plan Supplement, as may be amended, modified, or supplemented by the Debtors from time to time prior to the Confirmation Date.

"*Avoidance Actions*" means causes of action arising under Bankruptcy Code sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

"*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas, having jurisdiction over the Subchapter V Cases or, if the Bankruptcy Court ceases to exercise jurisdiction over the Subchapter V Cases, such court or adjunct thereof that exercises jurisdiction over the Subchapter V Cases in lieu of the United States Bankruptcy Court for the Northern District of Texas.

"*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

"*Bar Date(s)*" means the Claims Bar Date, the Governmental Bar Date, or the Rejection Damages Bar Date, as applicable; and "Bar Dates" means a collective reference to the Claims Bar Date, the Governmental Bar Date, and the Rejection Damages Bar Date.

"*Bill of Sale*" means the bill of sale between the Debtors and Touchstone to sell substantially all Assets, exclusive of Cash, accounts receivable, and Causes of Action.

"*Board*" means the board of members to the Debtors.

"*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"*Cash*" means the legal tender of the United States of America or the equivalent thereof.

"*Causes of Action*" means any claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever, in each case now owned or hereafter acquired by the Debtors and/or their Estates, and in each case, whether known or unknown, Contingent or non-Contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Subchapter V Cases, including through the Effective Date.

"*Claim*" means a "claim," as that term is defined in Bankruptcy Code section 101(5), against any Debtor.

"*Claims Bar Date*" means the date for filing Proofs of Claim, April 8, 2024.

"*Claims Objection Deadline*" means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

"*Claims Register*" means the official register of Claims.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

"*Collateral*" means any property or interest in property of the Estates subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law.

"*Commitment Period*" means the 3-year period contemplated and set forth under Bankruptcy Code section 1191(c).

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under Bankruptcy Code section 1128 at which the Debtors seek entry of the Confirmation Order, as such hearing(s) may be adjourned or continued from time to time.

"*Confirmation Order*" means a Final Order of the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code section 1129.

"*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Subchapter V Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"Consummation" means the occurrence of the Effective Date.

"*Contingent*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, any contingent or unliquidated Claim asserted or which may be asserted against the Debtors.

"*CRO*" means Kevin O'Halloran, serving as Chief Restructuring Officer of the Debtors.

"*Cure Notice*" means a notice sent to counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under this Plan pursuant to Bankruptcy Code section 365, which shall include: (a) procedures for objecting to proposed assumptions or assumptions and assignments of Executory Contracts and Unexpired Leases, (b) the proposed amount to be paid on account of Cure Claims, and (c) procedures for resolution by the Bankruptcy Court of any related disputes; provided that the Schedule of Assumed Executory Contracts and Unexpired Leases and any amended Schedule of Assumed Executory Contracts and Unexpired Leases may each constitute a "Cure Notice" hereunder.

"*Cure*" or "*Cure Claim*" means any Claim (unless waived or modified by the applicable counterparty) against a Debtor based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

"*D&O Insurance Policies*" means all primary and excess insurance policies of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of the Debtors' directors and officers.

"*Debtor Release*" has the meaning ascribed to such term in Article VIII.F.

8

"*Debtor Releasing Parties*" has the meaning ascribed to such term in Article VIII.F.

"*Debtors*" means, collectively, PM Management - Killeen I NC LLC, PM Management - Killeen II NC LLC, PM Management - Killeen III NC LLC, and PM Management – Portfolio VIII NC LLC.

"*Disallowed*" means, with respect to any Claim or Interest, or any portion thereof, except as otherwise provided herein, a Claim or Interest, or any portion thereof that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as Contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

"*Disputed*" means, with respect to any Claim or Interest, or any portion thereof, a Claim or Interest, or any portion thereof, that is not yet Allowed, including (a) any Claim evidenced by a Proof of Claim that, on its face, is contingent or unliquidated; (b) any Claim that is subject to an objection Filed by the Claims Objection Deadline or a request for estimation, in each case that has not been withdrawn, resolved, or ruled on by a Final Order of the Bankruptcy Court; (c) any Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, (d) any Claim or Interest evidenced by a Proof of Claim which amends a Claim or Interest scheduled by the Debtors as Contingent, unliquidated or disputed, and (e) any Claim or Interest that is not an Allowed Claim or Allowed Interest or a Disallowed Claim or a Disallowed Interest.

"*Distribution*" means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Plan.

"*Effective Date*" means the date which is the first Business Day on which the conditions set forth in Article IX.B have been satisfied or waived.

"*Entity*" shall have the meaning set forth in Bankruptcy Code section 101(15).

"*Estate*" means the estate of any Debtor created under Bankruptcy Code sections 301 and 541 upon commencement of the applicable Debtor's Subchapter V Cases.

"*Exculpated Parties*" means collectively, and in each case in their capacity as such during the Subchapter V Cases the Debtors, the Debtors' Professional, Omni, the CRO, the Independent Manager, and Touchstone.

"*Executory Contract*" means all contracts and leases to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Facilities*" means the facilities owned by the Landlords and operated by the Debtors.

"*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Subchapter V Cases.

"*Final Decree*" means the order entered pursuant to Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Subchapter V Cases.

"*Final Order*" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has been entered on the docket in the Subchapter V Cases (or the docket of such other court) that is not subject to a stay and has not been modified, amended, reversed or vacated and as to which (a) the Sale and Transition have been consummated; (b) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing pursuant to Bankruptcy Rule 9023 has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (c) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was timely and properly appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired.

"*First Day Declaration*" means the Declaration of Kevin O'Halloran, Chief Restructuring Officer in Support of Subchapter V of Chapter 11 Petitions and First Day Pleadings [Docket No. 33].

"*General Unsecured Claim*" means any Unsecured Claim.

"*Governmental Bar Date*" means the date for Governmental Units to file Proofs of Claim, July 29, 2024.

"*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code section 101(27).

"*Gutnicki*" means Gutnicki LLP.

"*Holder*" means the beneficial holder of any Claim or Interest.

"*HUD Loans*" means the HUD-backed loan provided by KeyBank to the Landlords as financing for the Facilities.

"*Impaired*" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

*Independent Manager*" means C. Ben Garren Jr., serving as independent manager of the Debtors' Board.

"*Interest*" means any "equity security" in a Debtor, as defined in Bankruptcy Code section 101(16), including, without limitation, all issued, unissued, authorized or outstanding ownership interests (including common and preferred) or other equity interests, together with any warrants, options, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such equity interests at any time and all rights arising with respect thereto.

"*KeyBank*" means KeyBank National Association.

"*Landlords*" means HC-RW Associates, Ltd., HC Associates, Ltd., and HC Hill Country Associates, Ltd.

"*Lien*" means "lien," as defined in Bankruptcy Code section 101(37).

"*Liquidation Trust*" means the Liquidation Trust established pursuant to this Plan and the Liquidation Trust Agreement.

"*Liquidation Trust Agreement*" means the Liquidation Trust Agreement, as may be amended, supplemented, restated, or otherwise modified from time to time pursuant to the terms thereof, by and between the Debtors and the Liquidation Trustee, the form of which shall be subject to the approval of the Debtors, the then-current form of which shall be included in the Plan Supplement.

"*Liquidation Trust Assets*" means all Collections, Avoidance Actions that have not already been settled as of the Effective Date, Commercial Tort Claims, which are property of the Debtors or their Estates as of the Effective Date, all other Causes of Action, which are property of the Debtors or their Estates as of the Effective Date, all other assets of the Debtors and their Estates to be liquidated through this Plan.

"*Liquidation Trust Committee*" means the committee of three members, a representative of each of the following Class 3 creditors (i) HCK, LP, (ii) Medline Industries Inc., and (iii) PharmScript of Texas, LLC to oversee the Liquidation Trust. Any compensation to be paid to the members of the Liquidation Trust Committee shall be paid from Liquidation Trust Assets.

"*Liquidation Trustee*" means Russell F. Nelms.

"*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas, or any other court having jurisdiction over the Subchapter V Cases.

"*Omni*" means Omni Agent Solutions, Inc., which was retained as claims, noticing, and solicitation agent on January 29, 2024.

"*Patient Privacy Order*" means the *Order Authorizing Procedures to Maintain and Protect Confidential Patient Information* [Dkt. No. 45].

"*Petition Date*" means January 29, 2024, the date on which the Debtors commenced the Subchapter V Cases as applicable to each particular Debtor.

"*Plan*" means this *Debtors' Third Amended Subchapter V Joint Plan of Liquidation*, dated as of April 25, 2024, including all exhibits, supplements, appendices, and schedules thereto, either in its present form or as the same may be amended, supplemented, or modified from time to time.

"*Plan Documents*" means this Plan, the Plan Supplement, and all the exhibits and schedules attached to each of the foregoing.

"*Plan Proponents*" means the Debtors.

"*Plan Supplement*" means the supplemental documents, schedules, and exhibits to this Plan to be Filed by the Debtors containing substantially final forms of, among other things, retained Causes of Action, and the Schedule of Assumed Executory Contracts and Unexpired Leases. The Debtors shall have the right to amend all of the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

"*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

"*Priority Unsecured Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, which is entitled to priority under Bankruptcy Code section 507(a).

"*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under this Plan.

"*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327 or 1103 and to be compensated for services rendered before or on the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, or 331.

"*Professional Fee Claim*" means any Administrative Claim for the compensation of a Professional and the reimbursement of expenses incurred by such Professional through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

"*Professional Fee Claims Bar Date*" means the first business day which is 45 days after the Effective Date.

"*Proof of Claim*" means a proof of Claim or Interest Filed against any Debtor in the Subchapter V Cases.

"*Protected Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors; (b) the Debtors' Professional: Gutnicki; (c) the individual members of the Debtors' management, including the CRO; (d) the Independent Manager; and (e) Touchstone.

"*Rejection Claims*" means any Claim arising from, or relating to, the rejection of an Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) by any of the

Debtors, as limited, in the case of a rejected Unexpired Lease, by Bankruptcy Code section 502(b)(6).

"*Rejection Damages Bar Date*" means the date by which Rejection Claims must be Filed, 30 days after the later of (i) the Confirmation Date, or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.

"*Released Parties*" means, collectively, and in each case in their capacities as such during the Subchapter V Cases: (a) the Debtors; (b) the Independent Manager; (c) the CRO; and (d) Touchstone.

"*Releasing Parties*" means the Debtor Releasing Parties.

"*Sale*" means the sale of substantially all Assets, explicitly excluding Cash, accounts receivable, and Causes of Action, to Touchstone through this Plan.

"*Scheduled*" means with respect to any Claim, the status and amount, if any, of such Claim as set forth in the Schedules.

"*Schedules*" means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, as such Schedules may be amended, modified, or supplemented from time to time.

"*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of Executory Contracts and Unexpired Leases to be assumed through the Plan. The Schedule of Assumed Executory Contracts and Unexpired Leases shall be attached to the Plan Supplement.

"*Secured Claim*" means any Claim against any Debtor: (a) secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the creditor's interest in an Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a) or (b) Allowed as such pursuant to this Plan.

"*Subchapter V Case(s)*" means (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court, and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court being jointly administered under Case No. 21-30700.

"*Subchapter V Trustee*" means Areya Holder Aurzada.

"*Touchstone*" means Touchstone Communities, LLC.

"*Transition*" means the transition of operations of the Facilities from the Debtors to Touchstone in a manner set forth in the Transition Agreements.

"*Transition Agreements*" means the Management Transition Agreements, the Change of Management Agent Checklist, the Change of Ownership Review Checklist, the Termination Agreement, the Termination of Lease Agreement, the Termination of Sub-Sublease, and any such other agreements necessary to effectuate the transition of operations of the Facilities from the Debtors to Touchstone.  The Transition Agreements shall be attached to the Plan Supplement.

"*U.S. Trustee*" means the Office of the United States Trustee for the Northern District of Texas.

"*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

"*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is "unimpaired" within the meaning of Bankruptcy Code section 1124.

"*Unsecured Claim*" means any Claim (including, without limitation, Allowed Prior Case Convenience Class Claims) other than Administrative Claims, Secured Claims, and Priority Unsecured Claims.

### B.    Interpretation, Application of Definitions, and Rules of Construction

The following rules of construction, interpretation, and application shall apply:

**(1)**    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders.

**(2)**    Unless otherwise specified, each section, article, schedule, or exhibit reference in this Plan is to the respective section in, article of, schedule to, or exhibit to this Plan.

**(3)**    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

**(4)**    The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of this Plan.

**(5)**    A term used herein that is not defined herein but that is used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.

**(6)**    The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan.

**(7)**     Unless otherwise provided, any reference in this Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as may be amended, restated, revised, supplemented, or otherwise modified.

**(8)**     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## III.    Unclassified Claims

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes and Interests set forth in Article III of this Plan.

### A.    Treatment of Administrative Claims

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a less favorable treatment with the Debtors, each Holder of an Allowed Administrative Claim will receive an amount of Cash equal to the full unpaid amount of such Allowed Administrative Claim on (1) the Effective Date or (2) the first Business Day after the date that is 30 calendar days after the date on which such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable.

All requests for payment of Administrative Claims must be Filed and served on the Debtors, pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests, if any, must be Filed and served on the Debtors, as applicable, and the requesting party no later than 15 days after the earlier of (i) the Administrative Claims Bar Date or (ii) the date such request for payment of an Administrative Claim is filed. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed.

### B.    Treatment of Professional Fee Claims

All requests for payment of Professional Fee Claims must be Filed no later than the Professional Fee Claims Bar Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and Bankruptcy Rules.  Once approved by the Bankruptcy Court, Allowed Professional Fee Claim shall receive an amount of Cash equal to the full unpaid amount of the Allowed Professional Fee Claim (1) on or promptly thereafter the Effective Date or (2) the first Business Day after the date that is 30 calendar days after the date on which a Professional Fee Claim becomes an Allowed Professional Fee Claim.

### C.    Priority Tax Claims

Except to the extent that the Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment with the Debtors, each Holder of an Allowed Priority Tax Claim will receive in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Priority Tax Claim an amount of Cash equal to the full unpaid amount of such Allowed Tax Claim on (1) the Effective Date or (2) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim.

## IV.    Classification and Treatment of Claims and Interests

Pursuant to Bankruptcy Code sections 1122, 1123, and 1190, Claims and Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Plan, as set forth herein. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan is premised upon the substantive consolidation of the Debtors solely for the purposes of voting, determining which Classes have accepted this Plan, confirming this Plan, and the resultant treatment of Claims and Interests and Distributions under this Plan.

This Plan contemplates the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Estimated Recovery |
|-------|-------------------|--------|---------------|--------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote | 45%-75% |
| 4 | Equity Interests | Impaired | Deemed to Reject | 0% |

### A.    Classification and Treatment of Claims and Interests

Except to the extent that the Debtors and a Holder of an Allowed Claim agree in writing to less favorable treatment for such Allowed Claim such Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon thereafter as reasonably practicable.

### (1)     Class 1 – Secured Claims

*Classification*. Class 1 consists of all Secured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Secured Claim and the Debtors agree in writing to less favorable treatment of its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Secured Claim: (i) payment in full, in Cash, of the unpaid portion of its Allowed Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes Allowed or (ii) such other treatment as the Debtors and the Holder of such Allowed Secured Claim may agree.  Notwithstanding this treatment, as of the Effective Date, the Debtors do not believe that there will be any Allowed Secured Claims made against the Debtors.

*Voting*. Class 1 is Unimpaired. Holders of Allowed Secured Claims in Class 1 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Secured Claims are not entitled to vote to accept or reject this Plan.

### (2)     Class 2 – Priority Unsecured Claims

*Classification*. Class 2 consists of all Priority Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed Priority Unsecured Claim and the Debtors agree in writing to less favorable treatment of its Allowed Priority Unsecured Claim, each Holder of an Allowed Priority Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed Priority Unsecured Claim: (i) payment in full, in Cash, on the later of the Effective Date and the date on which such Priority Unsecured Claim becomes Allowed; (ii) payment in the ordinary course of business between the Debtors, as applicable, and the Holder of such Allowed Priority Unsecured Claim; or (iii) such other treatment as the Debtors, and the Holder of such Allowed Priority Unsecured may agree.

*Voting*. Class 2 is Unimpaired. Holders of Allowed Priority Unsecured Claims in Class 2 are conclusively presumed to have accepted this Plan under Bankruptcy Code section 1126(f). Holders of Priority Unsecured Claims are not entitled to vote to accept or reject this Plan.

### (3)     Class 3 – General Unsecured Claims

*Classification*. Class 3 consists of all General Unsecured Claims.

*Treatment*. Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agree to less favorable treatment of its Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement, discharge, and release of, and in exchange for, its Allowed General Unsecured Claim, its Pro Rata share of the beneficial proceeds of the Liquidation Trust Assets. All Distribution to Allowed General Unsecured Claims shall be completed within the Commitment Period.

*Voting*. Class 3 is Impaired. Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or reject this Plan.

### (4)     Class 4 – Interests in the Debtors

*Classification*. Class 4 consists of all Interests in the Debtors.

*Treatment*. Holders of Interests in the Debtors shall not receive any Distribution under this Plan on account of such Interests. Upon the Effective Date, all Interests shall be cancelled.

*Voting*. Class 4 is fully impaired. Holders of Allowed Interests in Class 4 are conclusively presumed to have rejected this Plan under Bankruptcy Code section 1126(g). Holders of Interests are not entitled to vote to accept or reject this Plan.

## V.     Executory Contracts and Unexpired Leases

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, as of the Effective Date, all Executory Contracts and Unexpired Leases not listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed rejected by the applicable Debtor in accordance with, and subject to the provisions and requirements of Bankruptcy Code sections 365 and 1123. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Bankruptcy Code sections 365 and 1123. The Debtors reserve the right to assume and assign any executory contrary or Unexpired Lease until the Confirmation Date.  All assumed Executory Contracts and Unexpired Leases shall remain in full force and be assigned to Touchstone as part of the Transition.

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases will be deemed to have been assumed. The Confirmation Order shall constitute an order of the Bankruptcy Court under Bankruptcy Code sections 365 and 1123(b) approving the assumptions as of the Effective Date. Unless otherwise indicated, all assumptions of Executory Contracts and Unexpired Leases in this Plan will be effective as of the Effective Date.

### B.     Cure of Defaults and Adequate Assurance

Any monetary amounts by which each Executory Contract and Unexpired Lease to be assumed is in default shall be satisfied, pursuant to Bankruptcy Code section 365(b)(1), by payment of the default amount in Cash by the Debtors on the Effective Date or on such other terms as the parties to each such Executory Contract or Unexpired Lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure payments or (b) any other matter pertaining to assumption, the Cure payments required by Bankruptcy Code section 365(b)(1) shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the Executory Contract or Unexpired Lease at issue

18

shall be deemed assumed and assigned by the Debtors unless otherwise ordered by the Bankruptcy Court. The Debtors or the Liquidation Trust, as applicable, at Touchstone's determination, reserve the right to reject any Executory Contract or Unexpired Lease not later than 30 days after the entry of a Final Order resolving any such dispute.

At least 10 days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and assignment and proposed Cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption, related Cure amount, or adequate assurance must be Filed, served, and actually received by the Debtors at least seven days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have consented to such assumption and assignment or proposed Cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors, may remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption. Any Proofs of Claim Filed with respect to an

Assumed Executory Contract or Unexpired Lease shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

### C.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

## VI.    Distributions

### A.    Liquidation Trustee to Make Distributions

Unless ordered otherwise in the Confirmation Order, the Liquidation Trustee shall make all payments and Distributions required by this Plan. The Liquidation Trustee shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary

to perform her duties under this Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent her with respect to its responsibilities (as applicable); and (d) exercise such other powers as may be vested in the Liquidation Trustee by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Liquidation Trustee to be necessary and proper to implement the provisions hereof. Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Liquidation Trustee on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Liquidation Trustee shall be paid in Cash by the Liquidation Trust.

### B.    Quarterly Reports

In no event later than ninety (90) days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been provided for Distributions in accordance with this Plan, the Liquidation Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients and dates of all Distributions made by the Liquidation Trustee under this Plan through each applicable reporting period.

### C.    Method of Payment

Unless otherwise expressly agreed in writing, payments of Cash under this Plan shall be made by a check drawn on a domestic bank, ACH transfer, or an electronic wire. Whenever any payment, distribution, filing, delivery, or notice to be made under this Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

### D.    Objections to and Resolution of Claims

The Liquidation Trustee shall have the right to File objections to Claims after the Effective Date. All objections shall be litigated to entry of a Final Order; provided, however, that only the Liquidation Trustee has the authority to compromise, settle, otherwise resolve, or withdraw any objections without approval of the Bankruptcy Court.

### E.    Claims Objection Deadline

Objection Deadline shall be 60 days after the Effective Date; provided, however, that the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon notice of motion by the Liquidation Trustee.

### F.    Disputed Claims

Notwithstanding any other provision of this Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan. On any date that Distributions are to be made under the terms of this Plan, the Liquidation Trustee shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that

would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. Such Cash shall be provided by the Liquidation Trust. The Liquidation Trustee shall also segregate any interest, dividends, or proceeds of such Cash. Such Cash, together with any interest, dividends, or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

G.    **Delivery of Distributions**

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Debtors or Liquidation Trustee, as applicable, after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtors or Liquidation Trustee have not received a written notice of a change of address.

H.    **Undeliverable or Unclaimed Distributions**

If the Distribution to the Holder of any Claim is returned to the Liquidation Trustee as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidation Trustee is notified in writing of such Holder's then current address, at which time such undelivered distribution shall be made to such Holder within 90 days of receipt of such Holder's then current address or other necessary information; provided that any such undelivered distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) and revert to the Liquidation Trust and returned by the Liquidation Trustee to the Liquidation Trust at the expiration of six months from the later of (a) the Effective Date and (b) the date of the initial attempted distribution. Notwithstanding anything to the contrary contained in this Plan, nothing in this provision shall act as a bar to entry of a Final Decree Closing the Subchapter V Cases. Any uncashed or undeliverable Distributions reverted back the Liquidation Trust may be used for future Distributions.

I.    **Setoff and Recoupment**

From and after the Effective Date, the Liquidation Trustee may, to the extent permitted by Bankruptcy Code section 553 or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Causes of Action of any nature whatsoever that the Liquidation Trustee may have against the Holder of such Claim; provided, however, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor any other Cause of Action.

J.    **No Interest**

Unless otherwise explicitly provided for in this Plan, the Confirmation Order, or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

## VII.    Means of Implementation

### A.        Establishment of Liquidation Trust

On the Effective Date, the Liquidation Trustee shall sign the Liquidation Trust Agreement and, in their capacity as Liquidation Trustee, accept all Assets on behalf of the beneficiaries thereof, and be authorized to obtain, seek the turnover, liquidate, and collect all of the Assets not in the Liquidation Trustee's possession. The Liquidation Trust will then be deemed created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Liquidation Trust shall be established for the purposes of, inter alia, (i) liquidating any non-Cash Assets; (ii) prosecuting and resolving the Causes of Action, including Commercial Tort Claims; (iii) challenging and resolving Disputed Claims; and (iv) maximizing recovery of the Assets for the benefit of the beneficiaries thereof, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidation Trust.

### B.        Liquidation Trust Committee

On the Effective Date, Ronald Finch, Shane Reed, and John Camperlengo shall immediately and without further need for documentation or Bankruptcy Court Approval, be deemed to act as Liquidation Trust Committee.  The Liquidation Trust Committee shall be dissolved on the date the Subchapter V Cases close.  The Liquidation Trust Committee shall approve retention and fees of the Liquidation Trust's professional(s), approve the initiation of any Cause of Action and the settlement or other disposition thereof, consult with the Liquidation Trustee in connection with the administration of the Liquidation Trust, make recommendations to the Liquidation Trustee regarding with the administration of the Liquidation Trust, and submit questions to the Liquidation Trustee concerning administration of the Debtors' Estates and the Liquidation Trust.

### C.        Appointment of the Liquidation Trustee

The Liquidation Trustee shall be appointed by the Debtors, in consultation with the U.S. Trustee and the Subchapter V Trustee. Following appointment, the Liquidation Trustee shall act in accordance with this Plan, Liquidation Trust Agreement, and Confirmation Order, and in such capacity shall have the same powers as the boards of members and officers of the Debtors, subject to the provisions hereof (and all bylaws, articles of incorporation and related corporate documents are deemed amended by this Plan to permit and authorize the same). The Liquidation Trustee may be removed by the Liquidation Trust Committee, for cause, upon prior written notice to the Liquidation Trustee as set forth in the Liquidation Trust Agreement or for cause by the Bankruptcy Court after notice and hearing commenced by any creditor with an Allowed Claim or other right of payment under this Plan. In the event of resignation or removal, death or incapacity of the Liquidation Trustee, the Liquidation Trust Committee shall designate another Person or Entity to serve as Liquidation Trustee and thereupon the successor Liquidation Trustee, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties and obligations of the predecessor; provided, however, that the Liquidation Trustee shall be deemed removed on the date the Subchapter V Cases are closed, and no successor thereto

shall be designated. The Liquidation Trustee and its professionals shall be entitled to compensation payable from the Liquidation Trust.

### D.    Beneficiaries of the Liquidation Trust

Holders of Allowed Claims entitled to Distributions shall be the beneficiaries of the Liquidation Trust. Such beneficiaries shall be bound by the Liquidation Trust Agreement. The interests of the beneficiaries in the Liquidation Trust shall be uncertificated and nontransferable except upon death of the interest holder or by operation of law.

### E.    Vesting and Transfer of Assets to the Liquidation Trust

Pursuant to Bankruptcy Code section 1141(b), the Assets, other than the Assets included in the Sale, shall vest in the Liquidation Trust, free and clear of all Liens, Claims and Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Liquidation Trustee may abandon or otherwise not accept any non-Cash Assets that the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust. Any non-Cash Assets that the Liquidation Trustee so abandons or otherwise does not accept shall not be property of the Liquidation Trust.

### F.    Liquidation Trust Expenses

Subject to the provisions of the Liquidation Trust Agreement, all costs, expenses and obligations incurred by the Liquidation Trustee, including professional fees, in administering this Plan and the Debtors' Estates, and/or maintaining and administering the Liquidation Trust shall be a charge against any Liquidation Trust Assets.

### G.    Role of the Liquidation Trustee

### (1)    Exclusive Trustee

The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust and the Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include, without limitation, the authority and responsibility to: (a) receive, manage, invest, supervise, and protect the Assets; (b) pay taxes or other obligations incurred by the Liquidation Trust; (c) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals and consultants to advise and assist in the administration, prosecution and distribution of Assets; (d) investigate, prosecute, compromise, and settle, in accordance with the specific terms of the Liquidation Trust Agreement, Causes of Action vested in the Liquidation Trust; (e) object to, challenge, negotiate, or settle any Disputed Claims; (f) dissolve the Debtors and any subsidiaries of the Debtors; (g) recover any Assets for the benefit of the Liquidation Trust, including, but not limited to, accounts receivable of the Debtors, (h) abandon any Assets of the Liquidation Trust that it deems to be burdensome or of inconsequential value; and (i) undertake all administrative functions of this Plan, including the ultimate closing of the

23

Debtors' Subchapter V Cases.  The Liquidation Trustee is the successor to the Debtors and their Estates.

### (2)       Possession of Books and Records

On the Effective Date, the Liquidation Trustee shall: (a) take possession of all books, records, and files of the Debtors and their respective Estates; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required.

### (3)       Investment of Cash

The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Bankruptcy Code section 345 or in other prudent investments; provided, however, that such investments are permitted to be made by a liquidation trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

### (4)       Tax Returns

The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Liquidation Trust also shall annually (for tax years in which Distributions from the Liquidation Trust are made), send to each beneficiary a separate statement setting forth the beneficiary's share of item income, gain, loss, deduction or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidation Trust.  The Liquidation Trust's taxable income, gain, loss, deduction or credit will be allocated to the Liquidation Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidation Trust. As soon as practicable after the Effective Date, the Liquidation Trust shall make a good faith valuation of assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any governmental unit for taxing purposes. The Liquidation Trustee may request an expedited determination of taxes of the Debtors or of the Liquidation Trust under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Debtors and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust. The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Liquidation Trust. The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidation Trustee shall be subject to any such withholding and
reporting requirements.

(5)      **Allowed Tax Obligations**

The Liquidation Trust shall be responsible for payments of all Allowed tax obligations of the Debtors, and any taxes imposed on the Liquidation Trust.

H.      **Preservation of Right to Conduct Investigations**

The preservation for the Liquidation Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors prior to the Effective Date shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust.

I.      **Prosecution and Resolution of Causes of Action**

From and after the Effective Date, prosecution and settlement of all Causes of Action transferred to the Liquidation Trust shall be the sole responsibility of the Liquidation Trustee pursuant to this Plan and the Confirmation Order. From and after the Effective Date, the Liquidation Trustee shall have, with requisite approval of the Liquidation Trust Committee, exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle or abandon such Causes of Action as the sole representative of or successor to the Debtors' Estates pursuant to Bankruptcy Code section 1123(b)(3). Proceeds recovered from all Causes of Action will be deposited into the Liquidation Trust and will be distributed by the Liquidation Trustee to beneficiaries in accordance with the provisions of this Plan. **All Causes of Action that are not expressly released or waived under this Plan are reserved and preserved and vest in the Liquidation Trust in accordance with this Plan. No Person may rely on the absence of a specific reference in this Plan or the Plan Supplement to any Cause of Action against it as any indication that the Debtors or Liquidation Trustee will not pursue any and all available Causes of Action against such Person or Entity, except as otherwise provided in this Plan.** No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or substantial consummation of this Plan, except as otherwise provided in this Plan. No Causes of Action that have been otherwise released or exculpated shall be transferred to the Liquidation Trust; the Liquidation Trustee shall not have standing to pursue such claims or released or exculpated Causes of Action, and all such released or exculpated claims and Causes of Action shall be waived, released and discharged pursuant to this Plan. A nonexclusive schedule of Causes of Action shall be attached to the Plan Supplement. The Debtors' inclusion of, or failure to include, any right, action or claim in Plan Supplement shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that the Liquidation Trust may hold against any Entity, and all Entities are hereby notified that all such claims, demands, rights or Causes of Action are preserved, except as otherwise provided in this Plan.  To the extent the Liquidation Trustee believes there to be a conflict in the handling of a specific Cause of Action, the Liquidation Trustee shall report the conflict to the Liquidation Trust Committee and may, in consultation with the Liquidation Trust Committee, assign the Cause of Action to the Liquidation Trust Committee, which shall be directly responsible for the handling of the specific Cause of Action.

25

**J.      Federal Tax Treatment of the Liquidation Trust for the Assets**

For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidation trust under section 301.7701-4 of the Treasury Regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a Distribution from the Debtors; Estates of an undivided interest in each of the Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Liquidation Trust, and the Liquidation Trust's beneficiaries will be treated as the grantors and owners thereof.

**K.      Limitation of Liability**

No recourse will ever be had, directly or indirectly, against the Liquidation Trustee, members of the Liquidation Trust Committee, and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Liquidation Trustee under this Plan or by reason of the creation of any indebtedness by the Liquidation Trust or the Liquidation Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Assets. The Liquidation Trustee and his agents shall not be deemed to be the agent for any holder of a Claim in connection with Distributions made under this Plan. The Liquidation Trustee, members of the Liquidation Trust Committee, and their respective officers, directors, employees, professionals, representatives, agents, successors or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound judgment; *provided*, *however*, that this section will not apply to any specific act where the Bankruptcy Court determines in a Final Order that the action or inaction was grossly negligent or the result of willful misconduct. No such person shall be liable for any action or inaction of another person.

**L.      Term of Liquidation Trust**

The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all of the Assets have been liquidated, (ii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, and (ii) the Debtors' Subchapter V Cases have been closed.

**M.      Retention of Professionals**

Subject to the terms of this Plan and Confirmation Order to the extent they address the treatment and payment of Professional Fees incurred prior to the Effective Date, the Liquidation Trustee may, with requisite approval from the Liquidation Trust Committee, retain and compensate attorneys and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval. Representation of both the Liquidation Trustee and Liquidation Trust Committee by such professionals shall not be deemed to be a conflict of interest, make such professionals have an interest adverse to the Estates or the Debtors or otherwise not be disinterested. Upon the

appointment of the Liquidation Trustee under the Liquidation Trust Agreement, any Professionals retained by the Debtors shall no longer be obligated or required to continue to represent the Debtors after the Effective Date (unless such Professionals have agreed in writing to continue such representation) and, if such Professional elects to withdraw from such representation, such Professional shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Subchapter V Cases and the confirmation of this Plan. The confirmation of this Plan shall constitute any necessary consent and court approval to withdraw from such representation.

### N.       Conflicts Between Liquidation Trust Agreement and Plan

In the event of any direct conflicts between the express terms of the Liquidation Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

### O.       Cancellation of Existing Securities and Agreements

Except for purposes of evidencing a right to Distributions under this Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or Interests or rights of any holder of a Claim or Interest against any of the Debtors, including, but not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied as against the Debtors, but not as against any other Person or Entity.

### P.       Automatic Stay

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Subchapter V Cases until the Effective Date.

### Q.       Books and Records

As part of the appointment of the Liquidation Trustee, to the extent not already transferred on the Effective Date, the Debtors shall transfer dominion and control over all of their books and records to the Liquidation Trustee in whatever form, manner or media those books and records existed immediately prior to the transfer thereof to the Liquidation Trustee. The Liquidation Trustee may abandon all such books and records upon the closing of these Subchapter V Cases. Pursuant to section 554 of the Bankruptcy Code, this Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the books and records of the Debtors.

### R.       D&O Insurance Policies and Other Insurance Policies

No prepaid D&O Insurance Policies or other prepaid insurance policies shall be cancelled, and the Debtors' directors, officers, and employees who have valid claims against the D&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O Insurance Policies to the extent of the coverage provided by the D&O Insurance Policies. As such, and notwithstanding anything in this Plan to the contrary, pursuant to

27

sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O Insurance Policies or other insurance policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Debtors.  To the extent the D&O Insurance Policies or other insurance policies are invoked by the Liquidation Trustee or as a result of the Transition, the Liquidation Trust shall pay any and all deductibles related to the D&O and Cyber Insurance Policies.

S.      **Sale of Assets**

(1)      **Sale and Transition**

Pursuant to Bankruptcy Code section 1123(b)(4), the Debtors shall sell substantially all Assets, exclusive of Cash, accounts receivable, and Causes of Action, to Touchstone free and clear of all Liens, Claims, Interests, and all other encumbrances.  The full schedule of Assets shall be included in the Bill of Sale and Transition Agreements, which shall be attached to the Plan Supplement.  Closing of the Sale shall occur on the Effective Date.

(2)      **Arm's-Length and Touchstone's Good Faith**

The Sale was negotiated and is undertaken by the Debtors and Touchstone at arm's length without collusion or fraud, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  Touchstone is not an "insider" of the Debtors as that term is defined by section 101(31) of the Bankruptcy Code.  Touchstone (i) recognized that the Debtors were free to deal with any other party interested in acquiring the Assets and (ii) complied with the Bankruptcy Code and this Plan in all respects.  All payments to be made by Touchstone and other agreements or arrangements entered into by Touchstone in connection with the Sale have been disclosed; neither Touchstone nor the Debtors have entered into collusive bidding prohibited by Bankruptcy Code section 363(n) by any action or inaction; and no common identity of directors or controlling stockholders exists between and among Touchstone on the one hand, and the Debtors, on the other.  As a result of the foregoing, Touchstone is a "good faith purchaser" within the meaning of Bankruptcy Code section 363(m), and as such, is entitled to all of the protections afforded thereby, including in the event this Plan or any portion thereof is reversed or modified on appeal, and each of Touchstone and the Debtors otherwise have proceeded in good faith in all respects in connection with the Sale specifically and these Subchapter V Cases generally.

(3)      **Transfer of Assets Free and Clear**

The Debtors are the sole and lawful owner of the Assets included in the Sale, or otherwise has a valid, enforceable property interest in such, and title thereto is vested in the Debtors.  Subject to Bankruptcy Code section 363(f), and except as otherwise provided in this Plan or the Confirmation Order, the transfer of each of the Assets to Touchstone will be, as of the date of closing the Sale, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest Touchstone with all right, title, and interest of the Debtors to the Assets free and clear of, among other things: (i) all Liens, (ii) all debts arising under, relating to, or in connection with any act of the Debtors or Claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or

subsequent to the commencement of the Subchapter V Cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims and Liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, the Debtors' or Touchstone's interests in the Assets, or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction on use, voting, transfer, receipt of income or other exercise of any attributes of ownership), relating to, accruing or arising any time prior to or on the Closing Date. The Debtors served this Plan on all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any interest in the Assets included in the Sale.

### (4)    Free and Clear Findings Required by Touchstone

Touchstone would not have entered into the Sale and would not consummate the transactions contemplated thereby if the Sale to Touchstone were not free and clear of any and all interests pursuant to Bankruptcy Code section 363(f), or if Touchstone would, or in the future could, be liable for any of such interests.  Upon the Effective Date, Touchstone shall not be responsible for any interests with respect to the Sale, including the following: (i) any labor or employment agreements; (ii) all mortgages, deeds of trust and security interests; (iii) any intercompany loans and receivables between the Debtors of the Debtors' affiliates; (iv) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtors, or any affiliate of; (v) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) the Worker Adjustment and Retraining Notification Act, 29 U.S.C §§ 2101 et. seq., or (l) any other state or federal benefits or claims relating to any employment with the Reorganized Debtor or any of their predecessors; (vi) interests arising under any Environmental, Health and Safety Laws with respect to any assets owned or operated by Reorganized Debtor or any corporate predecessor at any time prior to the Effective Date and any liabilities of the Debtors; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (ix) any and all Interests arising out of violations, or other non-compliance with any law(s), regulation(s), standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration; and (x) any theories of successor liability or causes of action related thereto.  Sale of the Assets other than one free and clear of all interests would yield substantially less value for the Debtors, with less certainty, than the Sale as contemplated.  Therefore, the Sale contemplated by this Plan maximizes the Debtors recovery on the Assets, and, thus, is in the best interests of the Debtors, creditors and all other parties in interest.

(5)     **No Successor Liability**

Touchstone is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders exists now or has ever existed between Debtors, on the one hand, and the Touchstone, on the other. The conveyance of the Assets as part of the Sale does not amount to a consolidation, merger or *de facto* merger of Touchstone and the Debtors; there is not substantial continuity between Touchstone and the Debtors; there is no continuity of enterprise between the Debtors and Touchstone; Touchstone is not a mere continuation of the Debtors and Touchstone does not constitute a successor to the Debtors. Touchstone's acquisition of the Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Effective Date.  Touchstone's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets. Touchstone would not have acquired the Assets but for the foregoing protections against potential claims based upon "successor liability" theories. Touchstone will not have any successor or transferee liability for liabilities of the Debtors or any affiliate of the Debtors (whether u federal or state law or otherwise) as a result of the Sale.

T.     **Transition of Services**

Upon the Effective Date, the Transition shall occur pursuant to the terms of the Transition Agreements.  The Transition Agreements shall be attached to the Plan Supplement.

U.     **Section 1145 Exemption**

In accordance with Bankruptcy Code section 1145, the retention of Interests, to the extent applicable, under this Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

VIII.  **Effect of Plan Confirmation**

A.     **Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of this Plan shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan, each Entity acquiring property under this Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

B.     **Compromise and Settlement of Claims**

Pursuant to Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to this Plan, the provisions

of this Plan shall constitute a good faith compromise of all Claims set forth in Article VIII of this Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims.

     **C.**    **Plan Injunction**

     **Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been satisfied or released pursuant to this Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Released Parties, or the Exculpated Parties, or any of their respective properties or Estates: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to this Plan or that is otherwise inconsistent with the provisions of this Plan.**

     **D.**    **Protected Party Injunction**

     **The Bankruptcy Court shall retain exclusive jurisdiction over any suit brought on account of any Claim or Cause of Action against a Protected Party in connection with or arising out of the administration of, or otherwise related to, the Subchapter V Cases; the negotiation and pursuit of this Plan and all related agreements, instruments, and other documents; the solicitation of votes for, or confirmation of, this Plan; the funding of this Plan; the occurrence of the Effective Date; the administration of this Plan or the property to be distributed under this Plan; or the transactions in furtherance of any of the foregoing, and any Entity bringing such suit shall do so in the Bankruptcy Court or such other court as the Bankruptcy Court may direct. The other protections provided by this Section shall be in addition to, and shall not limit, any other releases, indemnifications, injunctions, exculpations, any and all other applicable law or rules protecting the Protected Parties from liability. For the avoidance of doubt, nothing in this Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units.**

E.      **Exculpation**

Notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, and to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any cause of action, Claim or other assertion of liability for any act or omission in connection with, relating to, or arising out of, the Subchapter V Cases, the Filing of the Subchapter V Cases, the formulation, preparation, dissemination, negotiation, administration, implementation or Filing of, as applicable, Plan or any other contract, instrument, release or other agreement or document created or entered into in connection with any of the foregoing, the pursuit of Confirmation, the pursuit of Consummation, the issuance of securities pursuant to this Plan, or the distribution of property under this Plan, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary herein, the Exculpated Parties shall, in all respects, be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have, and upon completion of this Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of consideration pursuant to, this Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan. With respect to any Exculpated Party that is not also an Estate fiduciary, such exculpation shall be as provided for by Bankruptcy Code section 1125(e). Notwithstanding anything contained herein, no exculpation shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

F.      **Releases by the Debtors**

Pursuant to Bankruptcy Code section 1123(b), and notwithstanding anything to the contrary in this Plan or Confirmation Order, on the Confirmation Date and effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, and to the fullest extent permitted by applicable law, in exchange for their cooperation, the Released Parties shall be deemed released and discharged by the Debtors and their Estates (the "Debtor Releasing Parties") from any and all claims, interests, obligations, debts, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivate claim asserted on behalf of any Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Subchapter V Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released

Party, the restructuring of Claims and Interests prior to or in the Subchapter V Cases, the negotiation, formulation, preparation, implementation or administration of this Plan, any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (the "Debtor Release"). Notwithstanding anything contained herein, no release shall be given in contravention of *Bank of N.Y. Trust Co. v. Off'l Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or the Debtors' Estates asserting any claim, cause of action or other assertion of liability released pursuant to the Debtor Release.

For the avoidance of doubt, the Debtor Release shall not operate to waive, release, or otherwise impair: (i) any Causes of Action arising from willful misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by a Final Order of the Court or any other court of competent jurisdiction; and/or (ii) the Rights of such Debtor Releasing Party to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Court.

### G.    Release and Exculpation Injunction

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, fines, penalties, or liabilities released or exculpated pursuant to this Plan.

### H.    Discharge of Claims

The Debtors shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

#### (1)    Consensual Plan - Discharge Under Bankruptcy Code section 1141(d)

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtors shall receive a discharge pursuant Bankruptcy Code section 1141(d), and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document

created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### (2)    Cramdown Plan - Discharge Under Bankruptcy Code section 1192

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtors shall receive a discharge "as soon as practicable after completion by the [Debtors] of all payments due within the [Commitment Period]" *See* 11 U.S.C. § 1192. Except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code section 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date and the completion of all Distributions contemplated under this Plan.

I.      **Preservation of Causes of Action**

(1)      **Vesting of Causes of Action**

i.      Except as otherwise provided in this Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the Estates may hold against any Entity shall vest in the Liquidation Trust on and after the Effective Date.

ii.      Except as otherwise provided in this Plan or Confirmation Order, after the Effective Date, the Liquidation Trustee shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action that were held by the Debtors and the Estates, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Subchapter V Cases.

(2)      **Preservation of All Causes of Action Not Expressly Settled or Released**

i.      Unless a Cause of Action against a holder or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including the Confirmation Order) of the Bankruptcy Court, the Debtors and their Estates expressly reserve such Cause of Action for later adjudication or administration by the Liquidation Trustee (including, without limitation, Causes of Action not specifically identified or described in this Plan or elsewhere or of which the Debtors or the Committee may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors or the Committee at this time or facts or circumstances which may change or be different from those the Debtors or the Committee now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in this Plan or any other Final Order (including the Confirmation Order). In addition, the Debtors and their Estates expressly reserve the right of the Liquidation Trustee to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. A non-exhaustive list of preserved Causes of Action shall be attached to the Plan Supplement.

ii.      Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidation Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Subchapter V Cases; (ii) the Debtors have objected to any such Entity's

35

proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent or unliquidated.

### J.      Release of Liens

Except as otherwise provided in this Plan or in any contract, instrument, release or other agreement or document created pursuant to this Plan, on the Effective Date, all mortgages, deeds of trust, liens, pledges or other security interests against property of the Estates shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors and the Liquidation Trustee.

### K.      Liabilities to, and Rights of, Governmental Entities

**(1)**      As to the United States, nothing in this Plan shall limit or expand the scope of the release or injunction to which the Debtors are entitled to under the Bankruptcy Code. The release, injunction and exculpation provisions contained in this Plan are not intended and shall not be construed to bar the United States from, subsequent to entry of the Confirmation Order, pursuing any police or regulatory action, except to the extent those release and injunctive provisions bar a governmental unit from pursuing Claims.

**(2)**      Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan or Confirmation Order shall discharge, release, impair or otherwise preclude: (1) any liability to a governmental unit under environmental law that is not a Claim; (2) any Claim of a governmental unit arising on or after the Effective Date; (3) any valid right of set-off or recoupment of the United States against a Debtor; or (4) any liability of the Debtors under environmental law to any governmental unit as the owner or operator of property that such Debtor owns or operates after the Effective Date, except those obligations to reimburse costs expended or paid by a governmental unit before the Effective Date or to pay penalties owing to a governmental unit for violations of environmental laws or regulations that occurred before the Effective Date; provided that the Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or liabilities. Nor shall anything in this Plan: (i) enjoin or otherwise bar the United States or any governmental unit from asserting or enforcing, outside the Bankruptcy Court, any liability described as not discharged in the preceding sentence, provided that the Debtors and the Liquidation Trustee reserve all of their rights and defenses under applicable law with respect to any such Claims or Liabilities; or (ii) divest any court of jurisdiction to determine whether any liabilities asserted by the United States or any governmental unit are discharged or otherwise barred by this Plan or the Bankruptcy Code.

**(3)**      Nothing in this Plan shall release or exculpate any non-Debtor, including the Exculpated Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Exculpated Parties, nor shall anything in this Plan enjoin the United States from bringing any claim, suit, action or other proceeding against the Exculpated Parties for any liability whatsoever.

**IX.     Conditions to Confirmation and Effective Date**

**A.     Conditions Precedent to Confirmation**

The following are conditions precedent to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section IX.C of the Plan:

**(1)**     The Confirmation Order is in form and substance reasonably satisfactory to the Debtors and Touchstone;

**(2)**     All exhibits to the Plan Supplement are in form and substance reasonably satisfactory to the Debtors and Touchstone;

**(3)**     The fully executed versions of the Transition Agreements shall have been delivered to each of the Debtors, the Landlords, and Touchstone.

**B.     Conditions Precedent to the Effective Date**

The following are conditions precedent to the occurrence of the Effective Date of the Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to Section IX.C of the Plan;

**(1)**     The Bankruptcy Court shall have entered the Confirmation Order, which shall be final.

**(2)**     The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Liquidation Trustee to take all actions necessary or appropriate to implement the Plan, including execution and delivery of the Liquidation Trust Agreement, if not previously authorized by the Bankruptcy Court, and the other transactions contemplated by the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

**(3)**     No stay of the Confirmation Order shall then be in effect, and the Confirmation Order has become a Final Order.

**(4)**     The Liquidation Trust has the funds necessary for the Liquidation Trustee to make all payments required to be made on or prior to the Effective Date;

**(5)**     All documents and agreements required by Touchstone have been fully executed; and

**(6)**     The Debtors and Touchstone shall commence the Transition.

### C.      Waiver of Conditions Precedent

The conditions to the Effective Date set forth in this Article IX may be waived only by consent of the Debtors, and with respect to the Transition, the Debtors and Touchstone without any notice to other parties in interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate this Plan. The failure to satisfy any condition before the Confirmation Date or the Effective Date may be asserted by the Debtors as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors, in their sole discretion). The failure of the Debtors, in their sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

### D.      Effect of Nonoccurrence of Conditions

If the Effective Date does not occur, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Person or Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

## X.      Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Subchapter V Cases for, among other things, the following purposes:

     (1)      to hear and determine all matters relating to the assumption or rejection of Executory Contracts or Unexpired Leases and the allowance of Cure amounts and Claims resulting therefrom;

     (2)      to hear and determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

     (3)      to Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against or Interest in a Debtor, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims and Interests;

(4)      to ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan;

(5)      to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Bankruptcy Code sections 330 or 503;

(6)      to hear and determine any application to modify this Plan in accordance with Bankruptcy Code section 1127, to remedy any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(7)      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(8)      to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court, except as otherwise provided herein;

(9)      to issue orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan;

(10)      to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(11)      to hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(12)      to determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, any of this Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan or the Plan Supplement;

(13)      to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Subchapter V Cases, the Bar Date, or the Confirmation Hearing for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(14)      to enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Subchapter V Cases (whether or not the Subchapter V Cases have been closed);

(15)      to hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge;

(16)    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(17)    to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Subchapter V Cases with respect to any Person;

(18)    to hear any other matter related to this Plan and not inconsistent with the Bankruptcy Code; and

(19)    to enter a Final Decree closing the Subchapter V Cases.

## XI.    Miscellaneous Provisions

### A.    Amendment or Modification of this Plan

Alterations, amendments, or modifications of this Plan may be proposed in writing by the Debtors at any time before the Confirmation Date; provided that this Plan, as altered, amended, or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123. The Debtors may modify this Plan at any time after Confirmation and before substantial consummation, provided that this Plan, as modified, meets the requirements of Bankruptcy Code sections 1122 and 1123 and the circumstances warrant such modifications. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

### B.    Plan Supplement

Draft forms of certain documents, agreements, instruments, schedules and exhibits specified in this Plan shall, where expressly so provided for in this Plan, be contained in the Plan Supplement Filed from time to time and shall be incorporated into the Plan. Unless otherwise expressly provided in this Plan, the Debtors may File any Plan Supplement until seven (7) days prior to the voting deadline and may alter, modify or amend any Plan Supplement in accordance this Plan. Holders of Claims or Interests may obtain a copy of the Plan Supplement on the Debtors' website at https://cases.omniagentsolutions.com/?clientId=3688.

### C.    Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Debtors and all Holders of Claims or Interests receiving distributions pursuant to this Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

### D.    Governing Law

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent this Plan, an exhibit or a schedule hereto, a Plan Document or any settlement incorporated herein provide otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflict of laws thereof.

### E.    Time

To the extent that any time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, the time for the next occurrence or happening of said event shall be extended to the next Business Day.

### F.    Severability

If any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### G.    Revocation

The Debtors reserve the right to revoke and withdraw this Plan prior to the entry of the Confirmation Order. If the Debtors revoke or withdraw this Plan, this Plan shall be deemed null and void, and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

### H.    Reservation of Rights

This Plan shall have no force or effect unless and until entry by the Bankruptcy Court of the Confirmation Order. None of the Filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by any Debtor with respect to this Plan or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

## I.      Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

## J.      Service of Documents

Any pleading, notice, or other document shall be in writing and, unless otherwise provided herein, shall be served on:

| | |
|---|---|
| Debtors | PM Management - Killeen I NC LLC, et al<br>14841 Dallas Pkwy, Suite 440<br>Dallas, Texas 75254<br>Attention: Pam Joy |
| Counsel to Debtors | Gutnicki LLP<br>10440 N. Central Expy., Suite 800<br>Dallas, Texas 75231<br>Attention: Liz Boydston<br>lboydston@gutnicki.com |
| | Gutnicki LLP<br>45 Rockefeller Plaza, Suite 200<br>New York, New York 10111<br>Attention: Max Schlan<br>mschlan@gutnicki.com |
| United States Trustee | Office of the United States Trustee 1100<br>Commerce Street, Room 976<br>Dallas, Texas 75242<br>Attention: Lisa Lambert |
| Subchapter V Trustee | Holder Law<br>P.O. Box 2105<br>Addison, Texas 75001-2105<br>Attention: Areya Holder Aurzada |

## K.      Entire Agreement

Except as otherwise indicated, on the Effective Date, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations with respect to the subject matter of this Plan, all of which will have become merged and integrated into this Plan on the Effective Date.

L.      **Inconsistency**

To the extent the Confirmation Order and/or this Plan is inconsistent with any other agreement entered into between the Debtors and any third party, this Plan shall control any previous agreements and the Confirmation Order shall control this Plan.

M.      **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code sections 1125 and 1126, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with the solicitation. Accordingly, the Debtors shall be entitled to, and upon the Confirmation Date will be granted, the protections of Bankruptcy Code section 1125(e).

Executed this 25th day of April, 2024.        */s/ Kevin O'Halloran*
Dallas, Texas                                    **Kevin O'Halloran**
                                                 Chief Restructuring Officer
                                                 PM Management - Killeen I NC LLC
                                                 PM Management - Killeen II NC LLC
                                                 PM Management - Killeen III NC LLC
                                                 PM Management - Portfolio VIII NC LLC

**Exhibit A**

Liquidation Analysis

### Liquidation Analysis

| | |
|---|---|
| **Estimated Secured and Priority Creditor Recoveries** | $254,847 |
| **Estimated Administrative Expenses of the Debtors' Subchapter V Case** | |
| Estimated Debtors' Counsel Fees & Expenses | - |
| Estimated Patient Care Ombudsman Fees & Expenses | $30,000 |
| Estimated Subchapter V Trustee Fees & Expenses | $40,000 |
| Estimated Omni Fees & Expenses | $100,000 |
| Estimated Tax Advisor Fees & Expenses | $20,000 |
| **Estimated Ch. 7 Trustee & Counsel Fees** | $300,000 |
| | |
| **Total Estimated Secured, Admin, Priority & Liquidation Costs** | $744,847 |

| | |
|---|---|
| **Total Assets at Liquidation Value** | $1,879,645 |
| **Less Total Estimated Secured, Admin, Priority & Liquidation Costs** | $744,847 |
| | |
| **Balance Remaining for Unsecured Creditors** | $1,134,798 |
| | |
| **Estimated Unsecured Creditors' Claims Pool After Expected Objections** | $7,507,927 |
| **Estimated Percentage Recovery to Unsecured Creditors in Liquidation** | 15% |
| **Estimated Percentage Recovery to Unsecured Creditors Under Plan** | 48% |

**Exhibit 2**

**Liquidation Trust Agreement**

4892-8590-6871, v. 5

## LIQUIDATION TRUST AGREEMENT

This Liquidation Trust Agreement (the "Liquidation Trust Agreement") is made this [ ] day of [ ], 2024, by and among PM Management - Killeen I NC LLC, PM Management - Killeen II NC LLC, PM Management - Killeen III NC LLC, and PM Management – Portfolio VIII NC LLC (each a "Debtor" and, collectively, the "Debtors"), and Russell F. Nelms, as trustee (the "Liquidation Trustee") and executed in connection with the *Debtors' Third Amended Subchapter V Joint Plan of Liquidation*, dated April 25, 2024 (as the same has been or may be amended, the "Plan")[1] filed in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court").

## RECITALS

WHEREAS, on January 29, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the Bankruptcy Court, commencing Case Nos. 24-20340 (sgj), 24-30244 (sgj), 24-30246 (sgj), and 24-30247 (sgj);

WHEREAS, the Debtors' cases (collectively, the "Subchapter V Cases"), are being jointly administered pursuant to an order entered on February 6, 2024 [Docket No. 43];

WHEREAS, on February 4, 2024, the Office of the United States Trustee (the "United States Trustee") appointed Areya Holder Aurzada as Subchapter V Trustee [Docket No. 40] (the "Subchapter V Trustee");

WHEREAS, the Plan contemplates, on the Effective Date, (a) the creation of a Liquidation Trust (the "Liquidation Trust") and the creation of the beneficial interests in the Liquidation Trust solely for the benefit of the Holders of Allowed Claims against the Debtors entitled to Distributions (collectively, the "Beneficiaries" and, each individually, a "Beneficiary"), and (b) the Debtors' Assets will be vested with the Liquidation Trust as set forth in the Plan, including, without limitation, (i) all Cash on hand as of the Effective Date, after payment of amounts required to be paid on the Effective Date or as soon as practicable thereafter under the Plan, (ii) the Assets, including but not limited to, accounts receivable, (iii) the Causes of Action, except for those expressly released pursuant to the Plan, and (iv) all of the Debtors' books and records (collectively, the "Liquidation Trust Assets");

WHEREAS, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4(d), the Liquidation Trust shall be created for the purpose of: (a) administering the Liquidation Trust Assets; (b) resolving all Disputed Claims; (c) pursuing the Causes of Action, and (d) making all Distributions to the Beneficiaries provided for under the Plan and this Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidation Trust and the Plan; and

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given in the Plan.



1

**WHEREAS**, for federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidation trust under section 301.7701-4 of the Treasury Regulations and that such trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a Distribution from the applicable Debtor's Estate of an undivided interest in each of the Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Liquidation Trust, and the Liquidation Trust's Beneficiaries will be treated as the grantors and owners thereof. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

**NOW, THEREFORE**, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

Section 1.1    Creation and Purpose of the Liquidation Trust. The Debtors and the Liquidation Trustee hereby create the Liquidation Trust for the purposes of, *inter alia*, (i) liquidating any non-Cash Assets; (ii) prosecuting and resolving the Causes of Action, including Avoidance Actions; (iii) maximizing recovery of the Assets for the benefit of the Beneficiaries; and (iv) distributing the proceeds of the Liquidation Trust Assets to the Beneficiaries in accordance with the Plan and this Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary for, and consistent with, the liquidating purpose of the Liquidation Trust.

Section 1.2    Declaration of Trust. In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Liquidation Trustee have executed this Liquidation Trust Agreement and, effective on the Effective Date, all of the right, title, and interests of the Debtors' Estates in and to the Liquidation Trust Assets shall vest in the Liquidation Trust, to have and to hold unto the Liquidation Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Confirmation Order for the benefit of the Beneficiaries and their successors and assigns as provided for in this Liquidation Trust Agreement and in the Plan and Confirmation Order.

Section 1.3    Vesting and Transfer of Assets to the Liquidation Trust. On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, the Assets shall vest in the Liquidation Trust (including, but not limited to, any and all rights and powers vested in the Committee pursuant to any Final Order granting investigative authority pursuant to Bankruptcy Rule 2004), free and clear of all Liens, Claims, and Interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Liquidation Trustee may abandon or otherwise not accept any non-Cash Assets that the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust. Any non-Cash Assets that the Liquidation Trustee so abandons or otherwise does not accept shall not be property of the Liquidation Trust. The Assets include Causes of Actions, including, without limitation: (a) preference, fraudulent transfer and other

2

Avoidance Actions pursuant to chapter 5 of the Bankruptcy Code and state law counterparts, (b) state and common law claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, (c) breach of contract claims, (d) other commercial tort claims, and (e) claims and remedies seeking to establish a parent entity's liability for claims against a subsidiary. The Liquidation Trustee shall have no duty to arrange for any of the transfers contemplated hereunder or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers. Moreover, subject to the Confirmation Order or another prior Bankruptcy Court order to be entered in the Subchapter V Cases upon prior notice to creditors and other parties in interest, on the Effective Date, all privileges with respect to any Liquidation Trust Assets, including without limitation the attorney/client privilege, work product protection, or other privilege or immunity attaching to any documents or communications, to which the Debtors are entitled shall be automatically vested in, and available for assertion by or waiver by the Liquidation Trustee on behalf of the Liquidation Trust. The vesting of the attorney/client privilege, work product protection, or other privilege or immunity attaching to any documents or communications in the Liquidation Trustee is not intended as, and will not constitute or affect, a waiver of any such privilege, protection or immunity in favor of any creditor, party in interest or other third party. However, nothing herein shall preclude the Debtors or any other creditor or party in interest from contesting the scope or applicability of any such privilege, vesting, assertion or waiver. To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Liquidation Trust Agreement, the Debtors shall, to the extent practicable, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing and shall reasonably cooperate with the Liquidation Trustee in transitioning the administration of the Liquidation Trust Assets and Claims against the Debtors to the Liquidation Trust. To the extent any law or regulation prohibits the transfer of ownership of any of the Liquidation Trust Assets to the Liquidation Trust and such law is not superseded by the Bankruptcy Code, the Liquidation Trust's interest shall be a lien upon and security interest in such Liquidation Trust Assets, in trust for the sole use and purposes set forth in this Liquidation Trust Agreement, the Plan, and the Confirmation Order, which shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.

Section 1.4    Funding of the Trust. The Liquidation Trust shall be funded, on the Effective Date, with the Assets, to the extent provided for in the Plan and in the Confirmation Order.

Section 1.5    Acceptance by Liquidation Trustee. The Liquidation Trustee hereby accepts the trust imposed upon it by this Liquidation Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Liquidation Trust Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Liquidation Trust, the Liquidation Trustee hereby accepts the transfer of the Liquidation Trust Assets.

Section 1.6    Name of the Liquidation Trust. The Liquidation Trust established hereby shall be known as the "PM Management Liquidation Trust."

Section 1.7    Capacity of Trust. To the fullest extent permitted by applicable law and notwithstanding anything herein to the contrary, the Liquidation Trust shall itself have the capacity

3

to act or refrain from acting, on its own behalf, including the capacity to sue and be sued. The Liquidation Trustee, in his sole capacity as Liquidation Trustee, may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state and federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

Section 1.8    Liquidation Trust Committee. On the Effective Date, a representative of each of the following Class 3 creditors (i) HCK, LP, (ii) Medline Industries Inc., and (iii) PharmScript of Texas, LLC shall immediately, and without further need for further documentation or Bankruptcy Court approval, be deemed to act as the Liquidation Trust Committee and the members thereof. The Liquidation Trust Committee shall be dissolved on the date the Subchapter V Cases are closed. The Liquidation Trust Committee shall, among other things, approve retention and fees of the Liquidation Trust's professional(s), approve the initiation of any Cause of Action and the settlement or other disposition thereof, consult with the Liquidation Trustee in connection with the administration of the Liquidation Trust, make recommendations to the Liquidation Trustee regarding the administration of the Liquidation Trust, and submit questions to the Liquidation Trustee concerning administration of the Debtors' Estates and the Liquidation Trust.

## ARTICLE II
## THE LIQUIDATION TRUSTEE

Section 2.1    Appointment. The Liquidation Trustee shall be appointed by the Debtors. The Liquidation Trustee's appointment shall continue until the earlier of (a) the termination of the Liquidation Trust or (b) the Liquidation Trustee's resignation, death, dissolution, removal, or liquidation.

Section 2.2    General Powers. Except as otherwise provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, the Liquidation Trustee may control and exercise authority over the Liquidation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Liquidation Trust. Nothing in this Liquidation Trust Agreement shall be deemed to prevent the Liquidation Trustee from taking, or failing to take, any action that, based upon the advice of counsel or other professionals, it determines it is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Liquidation Trustee owes to the Beneficiaries or any other person or Entity. No person dealing with the Liquidation Trust shall be obligated to inquire into the Liquidation Trustee's authority in connection with the acquisition, management, or disposition of Liquidation Trust Assets; provided, however, that the members of the Liquidation Trust Committee are entitled to make such inquiries in connection with the exercise of their rights pursuant Section 3.3 of this Liquidation Trust Agreement. Without limiting the foregoing, and unless specifically limited, restricted, waived, or released by the Plan, the Confirmation Order, or other provisions of this Liquidation Trust Agreement, the Liquidation Trustee shall be expressly authorized to, with respect to the Liquidation Trust and the Liquidation Trust Assets, and may cause the Liquidation Trust to:

(a)    Exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced, and take all actions that may be or could have been taken with respect to the Liquidation Trust Assets by any officer,

4



director, member, or other party acting in the name of the Debtors or their Estates with like effect as if duly authorized, exercised, and taken by action of such officers, directors, members, or other party.

      (b)    Open and maintain bank accounts on behalf of or in the name of the Liquidation Trust, calculate and make Distributions, and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Liquidation Trust, provided that, the Liquidation Trustee need not maintain the Liquidation Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Liquidation Trust; provided, however, that the Liquidation Trustee shall treat all such reserved funds as being held in segregated accounts in its books and records.

      (c)    Receive, manage, invest, supervise, and protect the Liquidation Trust Assets, subject to the limitations provided herein and in the Plan.

      (d)    Hold legal title to any and all Liquidation Trust Assets and to any and all rights of the Debtors in or arising out of the Liquidation Trust Assets.

      (e)    Subject to the applicable provisions of the Plan and this Liquidation Trust Agreement, collect and liquidate all Liquidation Trust Assets pursuant to the Plan.

      (f)    Review, and where appropriate and in consultation with the Liquidation Trust Committee, object to Claims, and supervise and administer the commencement, prosecution, settlement, compromise, withdrawal, or resolution of all Disputed Claims.

      (g)    Investigate any Causes of Action and any objections to Claims, and cause the Liquidation Trust to seek authority for the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004.

      (h)    Subject to Article IV of this Liquidation Trust Agreement, commence, prosecute, compromise, settle, withdraw, abandon, or resolve all Causes of Action.

      (i)    If necessary or appropriate, (1) seek a determination of tax liability or refund under section 505 of the Bankruptcy Code; (2) file any and all tax and information returns required with respect to the Liquidation Trust and Debtors (to the extent required by the Plan); (3) make tax elections for and on behalf of the Liquidation Trust and Debtors (to the extent required by the Plan); (4) pay taxes, if any, payable for and on behalf of the Liquidation Trust and Debtors (to the extent required by the Plan); and (5) file and prosecute claims for tax refunds to which the Debtors or the Liquidation Trust may be entitled.

      (j)    Pay all lawful expenses, debts, charges, taxes, and liabilities of the Liquidation Trust and make all payments relating to the Liquidation Trust Assets.



(k)    Make Distributions to the Beneficiaries, and to creditors of the Liquidation Trust as provided for, or contemplated by, the Plan, the Confirmation Order, and this Liquidation Trust Agreement.

(l)    Withhold from the amount distributable to any person or Entity such amount as may be sufficient to pay any tax or other charge which the Liquidation Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof.

(m)    Enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Liquidation Trust Agreement and perform all obligations thereunder.

(n)    If any of the Liquidation Trust Assets are situated in any state or other jurisdiction in which the Liquidation Trustee is not qualified to act as trustee, nominate and appoint a person, in consultation with the Liquidation Trust Committee, duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidation Trustee in its discretion; confer upon such trustee all the rights, powers, privileges, and duties of the Liquidation Trustee hereunder, subject to the conditions and limitations of this Liquidation Trust Agreement, except as modified or limited by the Liquidation Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Liquidation Trustee for all monies, assets and other property that may be received in connection with the administration of all property; and, in consultation with the Liquidation Trust Committee, remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidation Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal.

(o)    Subject to Section 5.6 of this Liquidation Trust Agreement, purchase and carry all insurance policies and pay all insurance premiums and costs it deems reasonably necessary or advisable.

(p)    Implement, enforce, or discharge all of the terms, conditions, and all other provisions of, and all duties and obligations under, the Plan, the Confirmation Order, and this Liquidation Trust Agreement.

(q)    Employ and compensate attorneys, financial advisors, and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval. Representation of the Liquidation Trustee and by such professionals shall not be deemed to be a conflict of interest, make such professionals have an interest adverse to the Estates or the Debtors or otherwise not be disinterested.

(r)    Undertake all administrative functions remaining in the Subchapter V Cases, including the ultimate closing of the Subchapter V Cases.

6

(s)    Undertake all administrative functions of the PM Management Liquidation Trust, including overseeing the winding down and termination of the PM Management Liquidation Trust.

(t)    Invest in demand and time deposits in banks or savings institutions, or temporary investments such as short term certificates of deposit or Treasury bills or other investments that a "Liquidation Trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the Internal Revenue Services ("IRS") guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

(u)    Hire former employees of the Debtors and their non-Debtor affiliates to the extent their services are needed to assist in the wind down of the estates.

(v)    Abandon or donate to a not-for-profit corporation, under applicable federal and state laws, any Liquidation Trust Assets that the Liquidation Trustee, in consultation with the Liquidation Trust Committee, determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Liquidation Trust and Beneficiaries.

(w)    Cause the Liquidation Trust to send annually to known Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Liquidation Trust and its share of the Liquidation Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns.

(x)    Take all other actions consistent with the provisions of the Plan, the Confirmation Order and this Liquidation Trust Agreement that the Liquidation Trustee deems reasonably necessary or desirable to administer the Liquidation Trust.

Section 2.3    Safekeeping and Investment of Trust Assets. All monies and other assets received by the Liquidation Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Liquidation Trust Assets, unless and to the extent required by law or the Plan or this Liquidation Trust Agreement. The Liquidation Trustee shall not be under any obligation to invest Liquidation Trust Assets. Neither the Liquidation Trust nor the Liquidation Trustee shall have any liability for interest or producing income on any monies received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Liquidation Trust or Liquidation Trustee, which shall be distributed as provided in the Plan. The powers of the Liquidation Trustee to invest any monies held by the Liquidation Trust, other than those powers reasonably necessary to maintain the value of the Liquidation Trust Assets and to further the Liquidation Trust's liquidating purpose, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; provided, however, that the scope of permissible investments shall be limited to include only those investments that a Liquidation Trust, within the meaning of Treasury Regulation section 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines,

7



whether set forth in IRS rulings, IRS pronouncements, or otherwise. Notwithstanding the foregoing, the Liquidation Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Liquidation Trustee's administration of the Liquidation Trust.

Section 2.4    <u>Compensation of Liquidation Trustee and its Agents and Professionals</u>.

(a)    The Liquidation Trustee shall be entitled to receive reasonable compensation for the performance of his duties after the Effective Date as set forth on **Exhibit A** plus the reimbursement of reasonable out-of-pocket expenses, incurred in the performance of the Liquidation Trustee's duties. Any successor to the Liquidation Trustee shall also be entitled to reasonable compensation in connection with the performance of their duties, which compensation may be different from the terms provided herein and shall be approved by the Liquidation Trust Committee, plus the reimbursement of reasonable out-of-pocket expenses incurred in the performance of the duties of the successor Liquidation Trustee.

(b)    Each of the Liquidation Trustee's agents and professionals (unless any such agents or professionals, the Liquidation Trustee, and the Liquidation Trust Committee agree to different treatment) seeking compensation or reimbursement shall serve a statement on the Liquidation Trustee and the Liquidation Trust Committee. The Liquidation Trustee and the Liquidation Trust Committee will have ten (10) days from the date such statement is received to review the statement and object to such statement by serving an objection on the party seeking compensation setting forth the precise nature of the objection and the amount at issue. At the expiration of the ten (10) day period, and without further order of the Bankruptcy Court (except as provided herein or in the Plan), the Liquidation Trustee shall pay from the Liquidation Trust Assets, or the proceeds or income thereof, but only after payment in Cash and in full of all Allowed Administrative Expense Claims (including Professional Fee Claims), Priority Tax Claims, Priority Unsecured Claims, and Secured Claims, 100% of the amounts requested, except for the portion of such fees and expenses to which any objection has been made or to the extent any Holder of such Claim agrees to separate treatment. The parties shall attempt to consensually resolve objections, if any, to any statement. If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and expenses may seek payment of such fees and expenses by filing a motion with and obtaining an order from the Bankruptcy Court and providing notice to the Liquidation Trustee and the Liquidation Trust Committee. If any agent or professional fails to submit a statement, it shall be ineligible to receive payment of fees and expenses therefore as provided in this Liquidation Trust Agreement until the statement is submitted.

Section 2.5    <u>Abandonment; Donation</u>. If, in the Liquidation Trustee's reasonable judgment, any Liquidation Trust Assets cannot be sold or distributed in a commercially reasonable manner or the Liquidation Trustee believes in good faith that such property has inconsequential value to the Liquidation Trust or its Beneficiaries or is insufficient to render a further Distribution practicable, the Liquidation Trustee shall have the right to cause the Liquidation Trust to abandon or otherwise dispose of such property, including by donation of such remaining funds to a charitable institution qualified as a not-for-profit corporation, under applicable federal and state laws without further order from the Bankruptcy Court.



Section 2.6    <u>Responsibility for Administration of Claims</u>. As of the Effective Date, the Liquidation Trustee shall become responsible for administering and paying Distributions to Beneficiaries of the Liquidation Trust in accordance with the Plan. The Liquidation Trustee shall have the right to object to the allowance of any Claim on any ground and shall be entitled to assert all defenses of the Debtors and their Estates. The Liquidation Trustee shall also be entitled to assert all of the Estates' rights under, without limitation, section 558 of the Bankruptcy Code. The Liquidation Trustee may also seek estimation of any Disputed Claim under and subject to section 502(c) of the Bankruptcy Code.

Section 2.7    <u>No Implied Obligations</u>. No implied covenants or obligations shall be read into this Liquidation Trust Agreement against the Liquidation Trustee.

Section 2.8    <u>Administrative Expense Claim Reserve</u>. The Liquidation Trustee shall administer a reserve for Administrative Expense Claims (the "<u>Administrative Expense Claim Reserve</u>") that shall consist of Cash necessary for the Liquidation Trustee to make Distributions under the Plan and the Liquidation Trust Agreement on account of all Allowed and Disputed Administrative Expense Claims incurred or accruing as of the Effective Date in accordance with the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The Administrative Expense Claim Reserve shall include estimated Professional Fee Claims, which estimate shall be provided to the Liquidation Trustee by each Professional on the Effective Date or promptly thereafter. The Liquidation Trustee shall be authorized to make Distributions from the Administrative Expense Claim Reserve in satisfaction of such Allowed Claims in accordance with this Liquidation Trust Agreement, the Plan, and the Confirmation Order.

Section 2.9    <u>Priority Claim Reserve</u>. The Liquidation Trustee shall administer a reserve for Priority Tax Claims and Priority Unsecured Claims (the "<u>Priority Claim Reserve</u>") that shall consist of Cash necessary for the Liquidation Trustee to make Distributions under the Plan and the Liquidation Trust Agreement on account of all Allowed and Disputed Priority Tax Claims and Priority Unsecured Claims as of the Effective Date in accordance with section 1129(a)(9) of the Bankruptcy Code. The Liquidation Trustee shall be authorized to make Distributions from the Priority Claim Reserve in satisfaction of such Allowed Claims in accordance with this Liquidation Trust Agreement, the Plan, and the Confirmation Order.

Section 2.10    <u>Disputed Claims Reserve</u>. The Liquidation Trustee shall administer a reserve for Disputed General Unsecured Claims (the "<u>Disputed GUC Claims Reserve</u>") that shall consist of Cash necessary for the Liquidation Trustee to make Distributions under the Plan and the Liquidation Trust Agreement on account of all Disputed General Unsecured Claims that have not been Allowed as of the date for any Distribution on account of such Claims under the Plan if such Disputed General Unsecured Claims were to become Allowed General Unsecured Claims. The Disputed GUC Claims Reserve is a separate and distinct reserve. The Liquidation Trustee shall be authorized to make Distributions from the Disputed GUC Claims Reserve in satisfaction of such Allowed General Unsecured Claims in accordance with this Liquidation Trust Agreement, the Plan, and the Confirmation Order.

9



Section 2.11 __Replacement of the Liquidation Trustee__. The Liquidation Trustee may resign at any time upon thirty (30) days' written notice filed with the Bankruptcy Court and served upon the Liquidation Trust Committee, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Liquidation Trustee. A majority of the Liquidation Trust Committee may remove the Liquidation Trustee for cause, upon prior written notice to the Liquidation Trustee. The Liquidation Trustee may also be removed by the Bankruptcy Court upon motion and after notice and a hearing, which motion may be brought by any creditor with an Allowed Claim or other right of payment under the Plan. In the event of the resignation or removal, death, or incapacity of the Liquidation Trustee, the Liquidation Trust Committee shall designate another Person or Entity to serve as Liquidation Trustee and thereupon the successor Liquidation Trustee, without any further act or need for an order of the Bankruptcy Court, shall become fully vested with all of the rights, powers, duties, and obligations of the predecessor; __provided, however__, that the Liquidation Trustee shall be deemed removed on the date the Subchapter V Cases are closed, and no successor thereto shall be designated. The Liquidation Trustee and its professionals shall be entitled to compensation payable from the Liquidation Trust. Upon their appointment, the successor Liquidation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, except as provided in Section 2.4(a) above, and all responsibilities of the predecessor Liquidation Trustee relating to the Liquidation Trust shall be terminated. The provisions of Article V of this Liquidation Trust Agreement shall survive the resignation or removal of any Liquidation Trustee.

Section 2.12 __Liquidation Trust Continuance__. The death, dissolution, liquidation, resignation, or removal of the Liquidation Trustee shall not terminate the Liquidation Trust or revoke any existing agency created by the Liquidation Trustee pursuant to this Liquidation Trust Agreement or invalidate any action theretofore taken by the Liquidation Trustee, and the provisions of this Liquidation Trust Agreement shall be binding upon and inure to the benefit of the successor Liquidation Trustee and all its successors or assigns.

Section 2.13 __Liquidation Trustee's Potential Conflicts of Interest__. The Liquidation Trustee shall disclose to the Liquidation Trust Committee any conflicts of interest that the Liquidation Trustee has with respect to any matter arising during the administration of the Liquidation Trust. In the event that the Liquidation Trustee cannot take any action, including without limitation the prosecution of any Cause of Action or the Objection to any Claim, by reason of an actual or potential conflict of interest, the Liquidation Trust Committee acting by unanimity shall be authorized to take any such action(s) in the Liquidation Trustee's place and stead, including without limitation the retention of professionals (which may include professionals retained by the Liquidation Trustee) for the purpose of taking such actions.

# ARTICLE III
# ARTICLE III LIQUIDATION TRUST COMMITTEE

Section 3.1 __Liquidation Trust Committee__. On the Effective Date, the named members of the Liquidation Trust Committee, as set forth in this Liquidation Trust Agreement and the Plan, shall immediately, and without further need for documentation or Bankruptcy Court approval, be deemed to act as the Liquidation Trust Committee, and in no event shall the Liquidation Trust Committee consist of more than three members. The Liquidation Trust Committee shall be



dissolved on the date the Subchapter V Cases are closed. The Liquidation Trust Committee shall approve retention and fees of the Liquidation Trust's professional(s), approve the Liquidation Trustee's retention and compensation to be paid to any former employee of the Debtors and their non-Debtor affiliates, approve the initiation of any Cause of Action and the settlement or other disposition thereof, consult with the Liquidation Trustee in connection with the administration of the Liquidation Trust, make recommendations to the Liquidation Trustee regarding the administration of the Liquidation Trust, and submit questions to the Liquidation Trustee concerning administration of the Debtors' Estates and the Liquidation Trust. To the extent any member of the Liquidation Trust Committee is unwilling or unavailable to initially serve on the Liquidation Trust Committee, no longer serves on the Liquidation Trust Committee due to resignation, death, disability, or removal from the Liquidation Trust Committee, or otherwise seeks or requires additional members (provided that the number of members shall not exceed three), any Holder of a Class 3 claim under the Plan may serve with the approval of the remaining Liquidation Trust Committee members as applicable. If the remaining members of the Liquidation Trust Committee are unable to agree on the new member, the Liquidation Trustee may select any Holder of a Class 3 claim to fill the open position. If no members remain on the Liquidation Trust Committee due to resignation, death, disability, or removal from the Liquidation Trust Committee, any Holder of a Class 3 claim under the Plan may serve with the approval of the Liquidation Trustee.

Section 3.2    Governance of the Liquidation Trust Committee. The Liquidation Trust Committee shall elect a chairperson (the "Chairperson") from amongst its members. The Chairperson, in consultation with the Liquidation Trustee, shall provide notice of the time and place of each meeting of the Liquidation Trust Committee to each member reasonably in advance, considering the circumstances, of such meeting. Provided reasonable notice is given, the presence of two members in person or via telephone shall constitute a quorum for the transaction of business at any Liquidation Trust Committee meeting. Action of the Liquidation Trust Committee shall be authorized by at least two members present in person or by telephone if there is a quorum. Liquidation Trust Committee members may be removed or replaced for cause by order of the Bankruptcy Court unless it is due to death or disability. Only the Liquidation Trustee may seek removal of a member of the Liquidation Trust Committee for cause with the Bankruptcy Court. The number of members of the Liquidation Trust Committee may not be reduced to fewer than three members. Should the Liquidation Trust Committee have less than three members, no quorum shall exist, except that in the event that less than three members of the Liquidation Trust Committee remains, the Liquidation Trust Committee may meet for the sole purpose of appointing additional members pursuant to Section 3.1 herein. Should no members of the Liquidation Trust Committee remain with the Liquidation Trust Committee formally resolving, the Liquidation Trustee may appoint new members to the Liquidation Trust Committee pursuant to Section 3.1.

Section 3.3    Reports to Liquidation Trust Committee. Notwithstanding any other provision of this Liquidation Trust Agreement, the Liquidation Trustee shall report to the Liquidation Trust Committee on a regular basis, not less than two (2) times per year. The Liquidation Trust Committee shall keep all such information strictly confidential, except to the extent the Liquidation Trust Committee deems it reasonably necessary to disclose such information to the Bankruptcy Court (in which case, a good faith effort shall be made to file such information under seal).



Section 3.4    <u>Actions Requiring Approval of the Liquidation Trust Committee</u>. The Liquidation Trustee shall receive approval from the Liquidation Trust Committee prior to taking any action regarding any of the following matters:

(a)    Initiation of any Cause of Action or the settlement or other disposition thereof;

(b)    Retention and employment of any professionals hired by the Liquidation Trustee or the expansion of services by any professional hired by the Liquidation Trustee;

(c)    Approval of fees of any professional hired by the Liquidation Trustee;

(d)    The sale, transfer, assignment, or other disposition of any non-Cash Liquidation Trust Assets having a valuation in excess of $100,000;

(e)    The abandonment of any non-Cash Liquidation Trust Assets having a valuation in excess of $50,000;

(f)    The borrowing of any funds by the Liquidation Trust or pledge of any portion of the Liquidation Trust Assets; and

(g)    Any matter which could reasonably be expected to have a material adverse effect on the amount of Distributions to be made by the Liquidation Trust in excess of $100,000.

Section 3.5    <u>Actions Requiring Consultation with the Liquidation Trust Committee</u>. The Liquidation Trustee shall consult with the Liquidation Trust Committee prior to taking any action regarding any of the following matters:

(a)    The sale, transfer, assignment, or other disposition of any non-Cash Liquidation Assets having a valuation less than $100,000;

(b)    The exercise of any right or action set forth in this Liquidation Trust Agreement that expressly requires consultation with the Liquidation Trust Committee, unless the applicable provision expressly requires unanimous approval of the Liquidation Trust Committee for the exercise of any such right or action; or

(c)    All investments authorized to be made by the Liquidation Trustee under this Liquidation Trust Agreement.

Notwithstanding the foregoing, the Liquidation Trustee may take any action deemed necessary for the benefit of the Beneficiaries, the Liquidation Trust, or the Debtors' Estates without consultation with the Liquidation Trust Committee if such action requires prompt consideration that will not allow the Liquidation Trustee, in the Liquidation Trustee's reasonable judgment, to consult with the Liquidation Trust Committee before such action takes place, <u>provided, however</u>, that the Liquidation Trustee shall inform the Liquidation Trust Committee of any action taken without

12



consultation promptly after the fact with a reasonable explanation as to why such action was taken without consultation

Section 3.6    Liquidation Trust Committee's Potential Conflicts of Interest. No member of the Liquidation Trust Committee shall participate in any consultation or discussion between the unconflicted Liquidation Trust Committee members and the Liquidation Trustee concerning (i) the allowance of a Claim asserted by that conflicted member of the Liquidation Trust Committee or (ii) any Claim asserted against that conflicted member of the Liquidation Trust Committee, and such conflicted member shall be excused from the meeting when any such consultation or discussion is held

Section 3.7    Compensation and Reimbursement of Liquidation Trust Committee Expenses. Each member of the Liquidation Trust Committee shall be entitled to reimbursement of reasonable out-of-pocket expenses, which expenses shall be subject to the Liquidation Trustee's review.

## ARTICLE IV
## PROSECUTION AND RESOLUTION OF CAUSES OF ACTION

Section 4.1    The Liquidation Trustee's Exclusive Authority to Pursue, Settle, or Abandon Causes of Action. Pursuant to Section VII.I of the Plan and subject to approval of the Liquidation Trust Committee, from and after the Effective Date, the Liquidation Trustee shall have exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle, or abandon any and all Causes of Action as the sole representative of the Debtors' Estates pursuant to section 1123(b)(3) of the Bankruptcy Code.

Section 4.2    Nothing herein shall preclude the Liquidation Trustee from seeking Bankruptcy Court approval of any settlement or compromise of any Causes of Action or Disputed Claim, nor shall any provision hereof be construed as limiting the jurisdiction of the Bankruptcy Court to hear and determine any such request for relief.

## ARTICLE V
## LIABILITY OF LIQUIDATION TRUSTEE
## AND THE LIQUIDATION TRUST COMMITTEE

Section 5.1    Standard of Care; Exculpation. Neither the Liquidation Trustee, the members of the Liquidation Trust Committee, nor any director, officer, member, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Liquidation Trust, the Liquidation Trustee, or any member of the Liquidation Trust Committee (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Liquidation Trust Agreement (including these exculpation

13



provisions), as and when imposed on an Exculpated Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidation Trustee's or Liquidation Trust Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Liquidation Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; provided, however, that the foregoing limitation shall not apply to any Losses found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Exculpated Party. Every act taken or omitted, power exercised or obligation assumed by the Liquidation Trustee or any Exculpated Party pursuant to the provisions of this Liquidation Trust Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Liquidation Trustee or any Exculpated Party acting for and on behalf of the Liquidation Trust and not otherwise; provided, however, that none of the foregoing Entities or persons are deemed to be responsible for any other such Entities' or persons' actions or inactions. Except as provided in the first proviso of the first sentence of this Section 5.1, every person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Liquidation Trust or any Exculpated Party shall have recourse only to the Liquidation Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings, or relationships, and the Liquidation Trust and the Exculpated Parties shall not be individually liable therefore. In no event shall an Exculpated Party be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Exculpated Party had been informed of the likelihood of such loss or damages and regardless of the form of action. Except as provided in the first proviso of the first sentence of this Section 5.1, any liability of the Liquidation Trustee under this Liquidation Trust Agreement will be limited to the amount of annual fees paid to the Liquidation Trustee. Without limiting the foregoing, the members of the Liquidation Trust Committee and the Liquidation Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and Confirmation Order.

Section 5.2    Indemnification.

(a)    The Liquidation Trustee, the members of the Liquidation Trust Committee, and any director, officer, member, affiliate, owner, parent, advisor, employee, employer, professional, successor, assign, agent, or representative of the Liquidation Trust, the Liquidation Trustee, or the members of the Liquidation Trust Committee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless, and indemnified from time to time by the Liquidation Trust against any and all Losses, including, without limitation, the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Liquidation Trust Agreement (including these indemnity provisions), as and when imposed on the Indemnified Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Liquidation Trustee's or Liquidation Trust Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Liquidation Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason

14



of any action, omission, or error of an Indemnified Party; provided, however, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party. Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Section shall be payable only from the Liquidation Trust Assets, shall be advanced prior to the conclusion of such matter and such right to payment shall be prior and superior to any other rights of Beneficiaries to receive a Distribution of the Liquidation Trust Assets (other than to the prior payment in Cash and all Allowed Administrative Expense Claims (including Professional Fee Claims), Priority Tax Claims, Priority Unsecured Claims and Secured Claims).

(b)    The Liquidation Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis. Each Indemnified Party hereby undertakes, and the Liquidation Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Liquidation Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Liquidation Trust Agreement.

Section 5.3    No Liability for Acts of Successor/Predecessor Liquidation Trustees. Upon the appointment of a successor Liquidation Trustee and the delivery of the Liquidation Trust Assets to the successor Liquidation Trustee, the predecessor Liquidation Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Liquidation Trustee shall have no further liability or responsibility with respect thereto. A successor Liquidation Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Liquidation Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidation Trustee unless a successor Liquidation Trustee expressly assumes such responsibility. A predecessor Liquidation Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Liquidation Trustee for any events or occurrences subsequent to the cessation of its role as Liquidation Trustee.

Section 5.4    Reliance by Liquidation Trustee and the Liquidation Trust Committee on Documents or Advice of Counsel or Other Professionals. Except as otherwise provided in this Liquidation Trust Agreement, the Liquidation Trustee, the members of the Liquidation Trust Committee, any director, officer, member, affiliate, owner, parent, advisor, employee, employer, professional, agent, or representative of the Liquidation Trustee or the members of the Liquidation Trust Committee may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Liquidation Trustee and/or members of the Liquidation Trust Committee to be genuine and to have been presented by an authorized party. Neither the Liquidation Trustee nor the Liquidation Trust Committee shall be liable for any action taken or omitted or suffered by the Liquidation Trustee or the Liquidation Trust Committee, as applicable, in reasonable reliance upon the advice of counsel or other professionals engaged by the Liquidation Trustee or the Liquidation Trust Committee, as applicable, in accordance with this Liquidation Trust Agreement. The Liquidation Trustee and the members of the Liquidation Trust Committee, as applicable, shall be fully indemnified by the Liquidation Trust for or in respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

15



Section 5.5    Conflicts of Interest. Conflicts of interest of the Liquidation Trustee will be addressed by the Liquidation Trust Committee as set forth above in Article III. If no Liquidation Trust Committee is serving or cannot make a quorum, the Liquidation Trustee will appoint a disinterested person to handle any matter where the Liquidation Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists. In the event the Liquidation Trustee is unwilling or unable to appoint a disinterested person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

Section 5.6    Insurance. The Liquidation Trustee, in consultation with the Liquidation Trust Committee, may purchase, using the Liquidation Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Liquidation Trustee deems reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Liquidation Trust Agreement.  To the extent the Liquidation trustee seeks to use or invoke any insurance policy related to any action taken with respect to the retained Causes of Action or any such insurance policy is invoked due to the Transition set forth in the Plan, the Liquidation Trust, through the use of the liquidation Trust Assets, shall pay any deductibles related to such policies.

Section 5.7    No Liability for Good Faith Error of Judgment. The Liquidation Trustee and members of the Liquidation Trust Committee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Liquidation Trustee or member of the Liquidation Trust Committee was grossly negligent in ascertaining the pertinent facts.

Section 5.8    Survival. The provisions of this Article V shall survive the termination of this Liquidation Trust Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Liquidation Trustee or the dissolution of the Liquidation Trust Committee.

## ARTICLE VI
## GENERAL PROVISIONS CONCERNING
## ADMINISTRATION OF THE LIQUIDATION TRUST

Section 6.1    Liquidation Trust Reserve. The Liquidation Trustee shall establish the Liquidation Trust Reserve, and the Liquidation Trustee shall have the authority to retain and supplement the Liquidation Trust Reserve as provided in Section 9.2.

Section 6.2    Register of Beneficiaries. The Liquidation Trustee shall maintain at all times a register of the names, distribution addresses, amounts of Allowed Claims, and the ratable interests in the Liquidation Trust of the Beneficiaries (the "Claims Register"). The initial Claims Register shall be delivered to the Liquidation Trustee by the Debtors and shall be based on the list of holders of Claims maintained by Omni Agent Solutions ("Omni") as of the Effective Date. The Liquidation Trustee may retain Omni (or another claims agent) to update and maintain such list throughout the administration of the Liquidation Trust Assets and the Claims required to be



administered by the Liquidation Trustee, and such list may serve as the Claims Register. All references in this Liquidation Trust Agreement to holders of beneficial interests in the Liquidation Trust shall be read to mean holders of record as set forth in the Claims Register maintained by the Liquidation Trustee and shall exclude any beneficial owner not recorded on such Claims Register. The Liquidation Trustee shall cause the Claims Register to be kept at its office or at such other place or places as may be designated by the Liquidation Trustee from time to time.

Section 6.3    Books and Records.

(a)    On the Effective Date and pursuant to the Plan and/or Confirmation Order authorizing such transfer and assignment, the Debtors shall transfer and assign to the Liquidation Trustee full title to, and the Liquidation Trustee shall be authorized to take possession of, all of the books and records of the Debtors. The Liquidation Trustee shall have the responsibility of physically taking possession of (with the Debtors' reasonable cooperation), storing and maintaining books and records transferred hereunder until the Subchapter V Cases are closed, after which time such books and records may, to the extent not prohibited by applicable law, be abandoned or destroyed without further Bankruptcy Court order. Upon the Liquidation Trustee's receipt of the Debtors' books and records, the Liquidation Trustee shall provide written notice to the Debtors thereof, relieving the Debtors of any further responsibility. For the purpose of this Section 6.3, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

(b)    The Liquidation Trustee also shall maintain in respect of the Liquidation Trust and the Beneficiaries books and records relating to the Liquidation Trust Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by the Liquidation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Liquidation Trust Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in this Liquidation Trust Agreement is intended to require the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or Distribution out of the Liquidation Trust Assets. The Liquidation Trust Committee shall have the right to inspect the books and records of the Liquidation Trust at any time upon reasonable notice to the Liquidation Trustee. Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Liquidation Trustee to inspect the Liquidation Trust's books and records, including the Claims Register, provided such Beneficiary shall have (i) entered into a confidentiality agreement in form and substance reasonably satisfactory to the Liquidation Trustee and (ii) agreed to pay all reasonable costs related to such inspection. Satisfaction of the foregoing conditions notwithstanding, if (a) the Liquidation Trustee and the Liquidation Trust Committee determine in good faith that the inspection of the Liquidation Trust's books and records, including the Claims Register, by any Beneficiary would be detrimental to the Liquidation Trust or (b) such Beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the Liquidation Trust, including any Claim objection, the Liquidation Trust may deny such request

17



for inspection. The Bankruptcy Court shall resolve any dispute between any Beneficiary and the Liquidation Trustee under this Section 6.3.

(c)    The books and records maintained by the Liquidation Trustee may be disposed of by the Liquidation Trustee at the later of (i) such time as the Liquidation Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Liquidation Trust or its Beneficiaries or (ii) upon the termination and completion of the winding down of the Liquidation Trust.

Section 6.4    Filing of Interim Reports. The Liquidation Trust shall, consistent with Section VI.B of the Plan, file with the Bankruptcy Court quarterly reports regarding the liquidation or other administration of the Liquidation Trust Assets. Such reports may, in the discretion of the Liquidation Trustee, be subsumed by, or combined with, any quarterly post-confirmation reports required by the Office of the United States Trustee.

Section 6.5    Final Accounting of Liquidation Trustee. The Liquidation Trustee (or any such successor Liquidation Trustee) shall within thirty (30) days after the termination of the Liquidation Trust or the death, dissolution, liquidation, resignation, or removal of the Liquidation Trustee, render an accounting containing the following information:

(a)    A description of the Liquidation Trust Assets;

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements, and other transactions in connection with the Liquidation Trust and the Liquidation Trust Assets during the Liquidation Trustee's term of service, including their source and nature;

(c)    Separate entries for all receipts of principal and income;

(d)    The ending balance of all Liquidation Trust Assets as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept;

(e)    All known liabilities of the Liquidation Trust; and

(f)    All pending actions.

Section 6.6    Filing of Accounting. The final accounting described in Section 6.5 shall be filed with the Bankruptcy Court.

## ARTICLE VII
## BENEFICIAL INTERESTS AND BENEFICIARIES

Section 7.1    Trust Beneficial Interests. Each holder of an Allowed Claim shall be entitled to receive beneficial interests in accordance with the treatment of such Claim under the Plan and this Liquidation Trust Agreement and shall be entitled to Distributions as set forth in the Plan.

18

Section 7.2 _Interest Beneficial Only_ Ownership of a beneficial interest in the Liquidation Trust shall not entitle any Beneficiary to any title in or to the Liquidation Trust Assets or to any right to call for a partition or division of the Liquidation Trust Assets or to require an accounting.

Section 7.3 _Evidence of Beneficial Interest_. Ownership of a beneficial interest in the Liquidation Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidation Trust by the Liquidation Trustee, which may be the Claims Register.

Section 7.4 _Exemption from Registration_. The parties hereto intend that the rights of the holders of the beneficial interests arising under this Liquidation Trust Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the parties hereto intend for the exemption from registration provided by section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

Section 7.5 _Transfers of Beneficial Interests_. Beneficial interests in the Liquidation Trust shall be nontransferable except upon death of the interest holder or by operation of law. The Liquidation Trust shall not have any obligation to recognize any transfer of Claims occurring after the Distribution Record Date. Only those holders of Claims of record stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

Section 7.6 _Absolute Owners_. The Liquidation Trustee may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Claims Register as the absolute owner thereof for the purposes of receiving Distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever. In no event shall the Debtors be deemed to have any ownership interest in the Liquidation Trust for federal or state income tax purposes.

Section 7.7 _Change of Address_. A Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court (copy served on the Liquidation Trustee) identifying such alternative distribution address. Absent such notice, the Liquidation Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Liquidation Trustee.

Section 7.8 _Effect of Death, Dissolution, Incapacity, or Bankruptcy of Beneficiary_. The death, dissolution, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust during the term of the Liquidation Trust nor shall it entitle the representative or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the Distribution of the Liquidation Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Liquidation Trust Agreement or in the Liquidation Trust.



Section 7.9    Standing. Except as expressly provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Liquidation Trust Assets.

# ARTICLE VIII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

Section 8.1    Incorporation of Plan Provisions. As of the Effective Date, the Liquidation Trustee shall have the right and authority to (a) make and file objections to all Claims and (b) compromise, settle, otherwise resolve or withdraw any objections to Claims without approval of the Bankruptcy Court. The Liquidation Trustee shall have sixty (60) days after the Effective Date to file all objections to Claims (except for Professional Fee Claims) and serve such objections upon the holders of the affected Claims. The Liquidation Trustee shall, for good cause, have the right to seek authority from the Bankruptcy Court to extend the dates for filing and serving the objections to the holders of such Claims.

Section 8.2    Disputed Reserves.

(a)    The Liquidation Trustee shall administer each of the Claims Reserves in accordance with the terms set forth in this Liquidation Trust Agreement.

(b)    The Liquidation Trustee shall make Distributions from each of the Claims Reserves only to the extent provided for by the Plan and this Liquidation Trust Agreement.

(c)    Each Claims Reserve shall be closed and extinguished by the Liquidation Trustee when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and this Liquidation Trust Agreement have been made as determined by the Liquidation Trustee. Upon closure of a Claim Reserve, all Cash and other property held in that Claim Reserve shall revest in the Liquidation Trust as a part of the general Liquidation Trust Assets.

(d)    Except to the extent provided in the Plan on the Effective Date, the Liquidation Trustee shall have no duty to fund any Claim Reserve.

(e)    Any property or notice which a person is or becomes entitled to receive pursuant to the Plan and this Liquidation Trust Agreement may be delivered by regular mail, postage prepaid, in an envelope addressed to that person's address listed in the Claims Register. Property distributed in accordance with this subsection shall be deemed delivered to such person regardless of whether such property is actually received by that person. Notice given in accordance with this subsection shall be effective only upon receipt.



## ARTICLE IX
## DISTRIBUTIONS

Section 9.1   Distributions to Beneficiaries from Liquidation Trust Assets. All payments to be made by the Liquidation Trust to any Beneficiary shall be made only in accordance with the Plan, the Confirmation Order, and this Liquidation Trust Agreement and from the Liquidation Trust Assets (or from the income and proceeds realized from the Liquidation Trust Assets) net of the Liquidation Trust Reserve (defined below), the Claim Reserves, and other reserves established by the Liquidation Trustee, if any, and only to the extent that the Liquidation Trust has sufficient Liquidation Trust Assets (or income and proceeds realized from the Liquidation Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Liquidation Trust Agreement. Before any Distribution can be made, the Liquidation Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Liquidation Trust, including fees and expenses of the Liquidation Trustee, fees and expenses of professionals retained by the Liquidation Trust or the Liquidation Trustee, the fees and expenses of other professionals, and fees owed the United States Trustee.

Section 9.2   Distributions; Withholding. The Liquidation Trustee shall make an interim Distribution to the Beneficiaries of all liquid assets (including distributions of all net Cash (including net Cash proceeds)) on or before July 31, 2024, and semi-annually thereafter if liquid assets are available; provided, however, that the Liquidation Trustee may retain and supplement from time to time the Liquidation Trust Reserve in such amount: (a) as is reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidation Trust Assets during the term of the Liquidation Trust; and (b) to pay the Liquidation Trust's incurred and projected expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses, and disbursing agent fees and expenses) of the Liquidation Trustee in connection with the performance of their duties in connection with this Liquidation Trust Agreement; provided further, however, all Distributions must be completed by the closing of the Commitment Period. The funding of the Liquidation Trust Reserve may preclude or reduce Distributions to Beneficiaries. All such Distributions shall be made as provided, and subject to any withholding or reserve, in this Liquidation Trust Agreement, the Plan or the Confirmation Order. Additionally, the Liquidation Trustee may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Liquidation Trustee's sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. In addition, all Distributions under this Liquidation Trust Agreement shall be net of the actual and reasonable costs of making such Distributions. Prior to the making of any Distributions contemplated hereunder, the Liquidation Trustee shall provide the Liquidation Trust Committee with five (5) business day's written notice of any such Distribution, which notice shall include a summary of the aggregate amounts to be distributed.

Section 9.3   No Distribution Pending Allowance. No payment or Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for Distributions into a Disputed Claims Reserve in accordance with the Plan, Confirmation Order, and this Liquidation Trust Agreement. For the

21



avoidance of doubt, (i) nothing herein or in the Plan shall preclude the Liquidation Trustee from making Distributions on account of the undisputed portions of Disputed Claims in the discretion of the Liquidation Trustee and (ii) the Liquidation Trustee may withhold any Distribution pending determination of whether to object to a Claim and amounts so withheld will be included in the Disputed Claims Reserve.

Section 9.4    Distributions after Allowance. Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan, Confirmation Order, and this Liquidation Trust Agreement.

Section 9.5    Non-Cash Property. Any non-Cash Liquidation Trust Assets may be sold, transferred or abandoned by the Liquidation Trustee. If, in the Liquidation Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Liquidation Trustee believes, in good faith, such property has no value to the Liquidation Trust, the Liquidation Trustee shall have the right, in consultation with the Liquidation Trust Committee, to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Liquidation Trustee. Except in the case of fraud, willful misconduct, or gross negligence, neither the Liquidation Trustee nor any director, officer, employee, consultant, or professional of the Liquidation Trustee, the Liquidation Trust Committee, or of any of its members or professionals, shall have any liability arising from or related to the disposition of non-Cash Liquidation Trust Assets in accordance with this Section.

Section 9.6    Undeliverable Distributions and Unclaimed Distributions. Subject to the terms of this section, Distributions returned to the Liquidation Trustee or otherwise undeliverable will remain in the possession of the Liquidation Trustee, until such time as a Distribution becomes deliverable. Undeliverable Cash will be held by the Liquidation Trustee for the benefit of the Beneficiary of such Cash, subject to the terms of the Plan. If any Distribution is returned as undeliverable, the Liquidation Trustee may, but shall not be required to, take reasonable steps to attempt to deliver the Distribution. Any holder of an Allowed Claim that does not advise the Liquidation Trustee that it has not received its Distribution within sixty (60) days after the date of attempted Distribution will have its Claim for such undeliverable Distribution discharged and will be forever barred from asserting any such Claim against the Liquidation Trust, the Debtors, or the Assets. In such cases, undeliverable Distributions will be distributed in accordance with the Liquidation Trust Agreement. Distributions must be negotiated within sixty (60) days of the date of Distribution.

Section 9.7    Unclaimed Property. Except with respect to property not Distributed because it is being held in a Disputed Claim Reserve, Distributions that are not claimed within sixty (60) days from the date of such Distribution shall be deemed to be unclaimed property and shall vest or revest in the Liquidation Trust, and the Claims with respect to which those Distributions are made shall be automatically canceled. All funds or other property that vests or revests in the Liquidation Trust pursuant to Section VI.H of the Plan and this Section 9.7 shall be distributed by the Liquidation Trustee to the other Beneficiaries in accordance with the provisions of the Plan and this Liquidation Trust Agreement. A Claim, and the unclaimed property distributed

22



on account of such Claim, shall not escheat to any federal, state, or local government or other entity by reason of the failure of its holder to claim a Distribution in respect of such Claim.

Section 9.8 <u>Time Bar to Cash Payments by Check</u>. Checks issued by the Liquidation Trust to Beneficiaries shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof. The reissuation of checks shall be made in writing to the Liquidation Trustee and may be reissued in the discretion of the Liquidation Trustee.

Section 9.9 <u>Withholding Taxes and Expenses of Distribution</u>. Except as otherwise provided herein, any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan. The Liquidation Trustee may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the sole and reasonable discretion of the Liquidation Trustee, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement. All holders of Claims shall be required to provide the Liquidation Trustee with any information necessary to effect the withholding of such taxes. If such information is not provided within one hundred and twenty days (120) days of being requested, all Distributions to which such holders are or become entitled shall be treated as unclaimed property, unless determined otherwise in the discretion of the Liquidation Trustee.

Section 9.10 <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Liquidation Trust Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Liquidation Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

(a) In so refusing, the Liquidation Trustee may elect to cause the Liquidation Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, neither the Liquidation Trust nor the Liquidation Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Liquidation Trust or Liquidation Trustee be liable for interest on any funds which may be so withheld.

(b) The Liquidation Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final order of the Bankruptcy Court or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Liquidation Trustee, which agreement shall include a complete release of the Liquidation Trust and Liquidation Trustee. Until the Liquidation Trustee receives written notice that one of the conditions of the preceding sentence is met, the Liquidation Trustee may deem and treat as the absolute owner under this Liquidation Trust Agreement of the beneficial interest in the Liquidation Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Liquidation Trustee. The Liquidation Trustee may deem and treat such

23



Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

(c)    In acting or refraining from acting under and in accordance with this Section 9.10 of the Liquidation Trust Agreement, the Liquidation Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article V of this Agreement.

Section 9.11    Distributions on Non-Business Days. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

Section 9.12    No Distribution in Excess of Allowed Amount of Claim. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

Section 9.13    Disallowance of General Unsecured Claims; Cancellation of Corresponding Beneficial Interests. All Claims in respect of undeliverable or unclaimed Distributions that have become unclaimed property shall be deemed disallowed and expunged. The holder of any such disallowed Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such disallowed Claim, and is forever barred, estopped, and enjoined from receiving any Distributions under the Plan, the Confirmation Order and this Liquidation Trust Agreement. Notwithstanding the foregoing or anything to the contrary in Section 9.7 hereof, upon the request of a party whose Distribution was deemed unclaimed property, the Liquidation Trustee may, in their discretion, reinstate the Allowed Claim (and corresponding beneficial interest in the Liquidation Trust) and make a replacement Distribution.

Section 9.14    Setoff. The Liquidation Trustee may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim in respect of which Distribution shall be made), any claims of any nature whatsoever that the Debtors may have or had against the holder of such Claim.

Section 9.15    De Minimis Amounts. The Liquidation Trustee shall not be obligated to make any Distributions on account of any Claim if the aggregate Distribution to such holder on account of such Allowed Claim does not exceed $50 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution. Any such de minimis amounts may be cumulated with further Distributions so that a Distribution on an Allowed Claim may exceed the de minimis amount.

Section 9.16    Priority of Expenses of Trust. The Liquidation Trust must pay or reserve for payment all of its expenses before making Distributions other than those Distributions on allowed Claims set forth in the Plan or the Confirmation Order.

## ARTICLE X
## TAXES

Section 10.1    Income Tax Status. For federal income tax purposes, it is intended that the Liquidation Trust be classified as a liquidation trust under section 301.7701-4 of the Treasury

24



Regulations and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a Distribution from the Debtors' Estates of an undivided interest in each of the Assets (to the extent of the value of their respective share in the applicable Assets) and then contributed such interests to the Liquidation Trust, and the Liquidation Trust's beneficiaries will be treated as the grantors and owners thereof.

Section 10.2   Tax Returns. The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Plan. The Liquidation Trust also shall annually (for tax years in which Distributions from the Liquidation Trust are made) send to each beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any Distribution from the Liquidation Trust. The Liquidation Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Liquidation Trust's beneficiaries in accordance with their relative beneficial interests in the Liquidation Trust. The Liquidation Trustee may request an expedited determination of taxes of the Debtors or of the Liquidation Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Liquidation Trust for all taxable periods through the dissolution of the Liquidation Trust. The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Debtors and the Liquidation Trust. The Liquidation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Liquidation Trustee shall be subject to any such withholding and reporting requirements.

Section 10.3   Withholding of Taxes and Reporting Related to Liquidation Trust Operations. Except as otherwise provided for herein or in the Plan, the Liquidation Trustee may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims or Equity Interests. The Liquidation Trustee shall be authorized to collect such tax information from the holders of Claims or Equity Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan. In order to receive Distributions under the Plan, all holders of Claims and Equity Interests will need to identify themselves to the Liquidation Trustee and provide all tax information the Liquidation Trustee deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder). The Liquidation Trustee may refuse to make a Distribution to any holder of a Claim or Equity Interests that fails to furnish such information within the time period specified by the Liquidation Trustee and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Liquidation Trustee fails to withhold in respect of amounts received or distributable with respect to any such holder and the Liquidation Trustee is later held liable for the amount of such withholding, such holder shall reimburse the Liquidation Trustee for such liability. Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim or Equity Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental



unit, and (b) no Distributions shall be required to be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the Liquidation Trustee for the payment and satisfaction of such tax obligations or has, to the Liquidation Trustee's satisfaction, established an exemption therefrom.

Section 10.4    Valuations. Pursuant to Section VII.G.4 of the Plan, as soon as possible after the Effective Date, the Liquidation Trust shall make a good faith valuation of assets of the Liquidation Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidation Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any governmental unit for taxing purposes.

Section 10.5    Treatment of Claims Reserves. Notwithstanding any other provision of this Liquidation Trust Agreement to the contrary, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidation Trustee may, in its sole discretion, determine the best way to report any Claims Reserve with respect to Disputed Claims. Accordingly, the Liquidation Trustee may, in its discretion, elect to (i) treat any Liquidation Trust Assets allocable to, or retained on account of, a Claims Reserve in accordance with Section 8.2 of this Liquidation Trust Agreement as held by one or more discrete trusts for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the IRC (Sections 641 et seq.), (ii) treat as taxable income or loss of each Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidation Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a Distribution from the Claims Reserve any increased amounts distributed by the Liquidation Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such Distributions relate to taxable income or loss of the Claims Reserve determined in accordance with the provisions hereof, (iv) file a tax election to treat any and all reserves for Disputed General Unsecured Claims as a "Disputed Ownership Fund" within the meaning of Treasury Regulation section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Liquidation Trust, and (v) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All Beneficiaries shall report, for income tax purposes, consistent with the election of the Liquidation Trustee. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidation Trustee as a result of the resolutions of such Disputed Claims.

Section 10.6    Expedited Determination of Taxes. The Liquidation Trust may request an expedited determination of taxes or tax refund rights of the Liquidation Trust, including the Disputed Reserves, under section 505(b) of the Bankruptcy Code for all returns or claims filed for the Liquidation Trust for all taxable periods through the termination of the Liquidation Trust.



## ARTICLE XI
## TERMINATION OF LIQUIDATION TRUST

Section 11.1  Termination of Liquidation Trust. The Liquidation Trustee shall be discharged and the Liquidation Trust shall be terminated, at such time as (i) all Disputed Claims have been resolved, (ii) all of the Assets have been liquidated, (iii) all duties and obligations of the Liquidation Trustee under the Liquidation Trust Agreement have been fulfilled, (iv) all Distributions required to be made under this Plan and the Liquidation Trust Agreement have been made, and (v) the Debtors' Subchapter V Cases have been closed.

Section 11.2  Events Upon Termination. At the conclusion of the term of the Liquidation Trust, the Liquidation Trustee shall distribute the remaining Liquidation Trust Assets (subject to a reserve for expenses incurred in winding up the affairs of the Liquidation Trust), if any, to the Beneficiaries, in accordance with the Plan, the Confirmation Order, and this Liquidation Trust Agreement. Any funds remaining after the affairs of the Liquidation Trust have been wound up shall be donated to a charitable institution qualified as a not-for-profit corporation.

Section 11.3  Winding Up, Discharge, and Release of the Liquidation Trustee. For the purposes of winding up the affairs of the Liquidation Trust at the conclusion of its term, the Liquidation Trustee shall continue to act as Liquidation Trustee until its duties under this Liquidation Trust Agreement have been fully discharged or its role as Liquidation Trustee is otherwise terminated under this Liquidation Trust Agreement and the Plan. Upon a motion by the Liquidation Trustee, the Bankruptcy Court may enter an order relieving the Liquidation Trustee, its agents and employees of any further duties, discharging, and releasing the Liquidation Trustee and its bond, if any.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

Section 12.1  Amendments. The Liquidation Trust Agreement may be modified, supplemented, or amended by the Liquidation Trustee as long as it is not inconsistent with the Plan or the Confirmation Order and such proposed modification, supplement or amendment is approved by a unanimous vote of the Liquidation Trust Committee. Any modified or amended Liquidation Trust Agreement shall be filed with the Bankruptcy Court.

Section 12.2  Waiver. No failure by the Liquidation Trustee or the Liquidation Trust Committee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

Section 12.3  Cumulative Rights and Remedies. The rights and remedies provided in this Liquidation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.



Section 12.4    No Bond Required. Notwithstanding any state law to the contrary, the Liquidation Trustee (including any successor Liquidation Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

Section 12.5    Irrevocability. This Liquidation Trust Agreement and the Liquidation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Liquidation Trust Agreement.

Section 12.6    Tax Identification Numbers. The Liquidation Trustee may require any Beneficiary to furnish to the Liquidation Trustee its social security number or employer or taxpayer identification number as assigned by the IRS and the Liquidation Trustee, and may condition any Distribution to any Beneficiary upon the receipt of such identification number. No Distribution shall be made to or on behalf of a Beneficiary unless and until such holder has provided the Liquidation Trustee with any information, records, or documents necessary to satisfy the Liquidation Trustee's tax reporting obligations, including, but not limited to, completed IRS Form W9, or, where applicable, a completed form W-8 or certificate of non- foreign status. If such information is not provided within one hundred and twenty (120) days, all Distributions to which such holders are or become entitled may be treated as Unclaimed Property.

Section 12.7    Relationship to the Plan. The principal purpose of this Liquidation Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidation Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event of any direct conflicts between the express terms of the Liquidation Trust Agreement and this Plan, the terms and provisions of the Plan shall control. In the event that any provision of the Liquidation Trust Agreement is found to be inconsistent with a provision of the Confirmation Order, the Confirmation Order shall control.

Section 12.8    Division of Liquidation Trust. Under no circumstances shall the Liquidation Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

Section 12.9    Applicable Law. This Liquidation Trust shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to rules governing the conflict of laws.

Section 12.10    Retention of Jurisdiction. Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, as set forth in Section IX.A of the Plan. Each party to this Liquidation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction and venue of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Liquidation Trust Agreement or of any other agreement or document delivered in connection with this Liquidation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Liquidation Trust Agreement will be brought

28



only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Liquidation Trust Agreement.

Section 12.11 Severability. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the resolicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

Section 12.12 Limitation of Benefits. Except as otherwise specifically provided in this Liquidation Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

Section 12.13 Notices. Except as provided in Section 12.10 of this Liquidation Trust Agreement, all notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail, when received and telephonically confirmed, addressed as follows:

      If to the Liquidation Trustee:

          russellnelmspllc@yahoo.com

      If to a Beneficiary:

          To the name and distribution address set forth in the Claims Register
          with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

Section 12.14 Further Assurances. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Liquidation Trust Agreement, and to consummate the transactions contemplated hereby.

Section 12.15 Integration. This Liquidation Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan and in the Confirmation Order. This Liquidation Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings,



negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Liquidation Trust Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

Section 12.16 Interpretation. The enumeration and Section headings contained in this Liquidation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidation Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Liquidation Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Liquidation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise. Any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" except for the references in Sections 5.1 and 5.2, and such other provisions in which the context otherwise requires.

Section 12.17 Counterparts. This Liquidation Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Liquidation Trust Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Liquidation Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

Dated: April 26, 2024

PM Management – Killen I NC LLC          Russell F. Nelms
PM Management – Killeen II NC LLC        in His Capacity as Liquidation Trustee
PM Management Killeen III NC LLC
PM Management – Portfolio VIII NC LLC

By:                                      By: _____
Name: KEVIN O'HALLORAN                   Name: _____
Title: CRO                               Title: _____

30

negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Liquidation Trust Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Liquidation Trust Agreement.

Section 12.16 Interpretation. The enumeration and Section headings contained in this Liquidation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidation Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Liquidation Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Liquidation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise. Any reference to the "Liquidation Trustee" shall be deemed to include a reference to the "Liquidation Trust" and any reference to the "Liquidation Trust" shall be deemed to include a reference to the "Liquidation Trustee" except for the references in Sections 5.1 and 5.2, and such other provisions in which the context otherwise requires.

Section 12.17 Counterparts. This Liquidation Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Liquidation Trust Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart.

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Liquidation Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

Dated: April 26, 2024

**PM Management – Killen I NC LLC**
**PM Management – Killeen II NC LLC**
**PM Management Killeen III NC LLC**
**PM Management – Portfolio VIII NC LLC**

By: _____
Name: _____
Title: _____

**Russell F. Nelms**
**in His Capacity as Liquidation Trustee**

By: _____
Name:   Russell F. Nelms
Title:   Liquidation Trustee

30

## Exhibit A

### Liquidating Trustee Compensation

Pursuant to Section 2.4 of this Liquidation Trust Agreement, this Exhibit sets forth the terms of the Liquidation Trustee's compensation.

The Liquidation Trustee shall be compensated for his services as Liquidation Trustee at a fixed hourly rate as outlined below:

| | |
|---|---|
| Russel F. Nelms | $600/hr. |
| Paralegal Services | $125/hr. |

The Liquidation Trustee will also be entitled to reimbursement of actual and necessary expenses, including those of its attorneys, advisors, employees, and agents, incurred in the performance of the Liquidation Trustee's duties.

31

